UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Docket No. CR05-5828FDB |
| | ) | |
| Plaintiff, | ) | Tacoma, Washington |
| | ) | February 11, 2008 |
| vs. | ) | |
| | ) | |
| BRIANA WATERS, | ) | VOLUME 1 |
| | ) | |
| Defendant. | ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE FRANKLIN D. BURGESS
SENIOR UNITED STATES DISTRICT COURT JUDGE, and a jury.

APPEARANCES:

For the Plaintiff:      MARK N. BARTLETT
                        ANDREW C. FRIEDMAN
                        Assistant United States Attorney
                        700 Stewart Street, Suite 5220
                        Seattle, Washington 98101-1271

For the Defendant:      ROBERT BLOOM
                        Attorney at Law
                        3355 Richmond Boulevard
                        Oakland, California 94611

                        NEIL M. FOX
                        Cohen & Iaria
                        1008 Western Ave., Suite 302
                        Seattle, Washington 98104

Court Reporter:         Teri Hendrix
                        Union Station Courthouse, Rm 3130
                        1717 Pacific Avenue
                        Tacoma, Washington  98402
                        (253) 882-3831

Proceedings recorded by mechanical stenography, transcript
produced by Reporter on computer.

<u>I N D E X</u>

PRETRIAL ISSUES...................................... 3

JURY VOIR DIRE...................................... 15

PRETRIAL ISSUES...................................... 27

MONDAY, FEBRUARY 11, 2008 - 9:00 A.M.

* * *

THE CLERK:  This is in the matter of the United States of America versus Briana Waters, cause CR05-5828FDB.

Counsel, please make an appearance for the record.

MR. FRIEDMAN:  Good morning, Andrew Friedman and Mark Bartlett for the United States.

MR. BLOOM:  Good morning, Neil Fox and Robert Bloom for Briana Waters.

THE COURT:  All right.  Let the record reflect that the defendant is present.  I understand there's some preliminary matters we need to talk about.  I thought we had talked about most of these things at the pretrial conference; I guessed we missed a few.

What I am going to do now is hear a few things.  I thought I explained, one was about the courtroom being open to the public, and it is.  I mentioned that what I would have to do first is impanel this jury.  There's quite a few of them coming in, so I need room for them to sit and all of that.

And I want those folks to occupy the seats first, and then we will see what seats are left, and then those will probably go in some pool and you can see who's the next one in line to come in and make sure the public aspect of it is done.

That's the way it will be done.  Once the jury has been empaneled the courtroom will be utilized in the fashion it's

1  normally utilized in.

2      Does that answer your question?

3          MR. FOX:  May I make a record, Your Honor?

4          THE COURT:  Okay.  Your Honor.

5          MR. FOX:  Your Honor, with all due respect, we

6  believe the courtroom should be completely open for jury

7  selection.  If there are too many jurors and not enough seats

8  for the public, then we need to get a larger courtroom.

9      I would just note for the record, that I don't know the

10 Ninth Circuit law very well on this, but I know the Washington

11 Supreme Court -- just a few years ago in Re: Orange --

12 reversed a conviction in Yakima, a murder case, where this

13 exact problem arose where there weren't enough seats during

14 jury selection for members of the defendant's family, and the

15 judge said we are just going to have all the seats for the

16 jurors; and then after jury selection, the members of the

17 public can have free access.  The Washington Supreme Court

18 found --

19         THE COURT:  I understand your exception, and you've

20 made it and that's noted.

21         MR. FOX:  Okay.

22         THE COURT:  But we are going to proceed in the

23 fashion I said.

24         MR. FOX:  Thank you.

25         MR. BLOOM:  A couple other matters not as specific as

1   that.  We just want to make the record clear that we are

2   concerned about the bare bones aspect of what we are going to

3   come to know about the jurors.  We've looked over the

4   questionnaires.  I know that there are going to be some

5   questions from the Court, and the jurors are going to have the

6   opportunity to give us some information.  So I may be

7   premature on that, but we did submit, as the Court knows, a

8   lengthy questionnaire regarding information that we think that

9   we and Ms. Waters and her family should know about the

10  perspective jurors.  We don't understand why it should all be

11  moving so quickly and be such a bare bones information.

12      Ms. Waters is facing, if she's convicted --

13          THE COURT:  I know all of those issues, but right now

14  you want to know why it's not done in terms of voir dire the

15  way you indicated in your questionnaire?

16          MR. BLOOM:  Yes, but I want to make a complete record

17  of that.

18          THE COURT:  I don't want you to argue the case.  Just

19  tell me what you want to do so we can get through this.  We

20  went through this at the pretrial conference.  I don't want to

21  have another one here today.  I want to start the trial.

22          MR. BLOOM:  Now that I am seeing -- for the first

23  time -- the jury questionnaires that the jurors have

24  completed, it is even more troubling to us.  And as I was

25  about to say, Ms. Waters is facing a mandatory minimum

1  sentence of 35 years if she's convicted, particularly of Count

2  6.  We believe it's important that we know more about the

3  jurors than we are going to learn.

4          THE COURT:  All right.

5          MR. BLOOM:  That's one thing.

6      Secondly, as a technical matter, we presumably will be,

7  both sides will be submitting questions to the Court that we

8  would ask the Court to pose to some or all of the prospective

9  jurors; and the Court will decide which of those, if any, he

10 is going to ask.  All I ask is that those proposed questions

11 by both sides be marked and retained for the Court record.

12         THE COURT:  Well, let me explain to you what I did

13 initially at the pretrial conference that the Court would do

14 the voir dire examination.  The Court would take your

15 questions that you think should be asked of the jury, both

16 sides, and then the questions the Court thinks should be asked

17 of the jury, and those questions will be asked of the jury.

18 They will get a chance to respond, and you will get a chance

19 to hear those responses.  You can make notes of them.

20     The Court Reporter will be taking all of this down, so

21 there will be a record.  Then once those questions have been

22 asked, you will ask for follow-up questions, whether any of

23 these jurors should be asked any additional questions.  You

24 will be asked to write those down and submit them to the

25 Court.  The Court will look those over and see if those are

1    appropriate questions that should be asked.

2        If they are not asked, the record will be made, and they

3    will be on file.  Did I answer all your questions?

4            MR. BLOOM:  The last sentence was yes.

5            THE COURT:  And I think I said this at the pretrial

6    conference, but you didn't take note of that.

7            MR. BLOOM:  I don't think we talked about whether or

8    not rejected questions would be kept a part of the record.

9            THE COURT:  That's why I asked you if you wanted to,

10   when we had the pretrial conference, if there was anything you

11   were confused about you could order out the transcript from

12   the Court Reporter and those matters would be answered.

13           MR. BLOOM:  While we are talking about the pretrial

14   conference, I do want to make note that that pretrial

15   conference was -- for reasons I don't understand -- closed to

16   the public, so that we are very concerned about this being a

17   public proceeding.  Indeed, this proceeding right here today,

18   is the very first time we have had any proceeding with this

19   court that's open to the public, the day of the trial.

20       I would like that record to be clear.

21           THE COURT:  Well, I don't know of any other

22   proceedings other than the one before me, and that was closed;

23   that was a pretrial conference.

24           MR. BLOOM:  There have been no others.  We have asked

25   for conferences.  We have asked for oral argument.

As I say, today is the very first time that the public is admitted to a conference between the Court and the parties, and we have a First Amendment right and we have a Fifth Amendment right and Sixth Amendment right.

THE COURT: I understand you have made your argument in the motions, so you don't have to remake them. I want to deal with the issues now so we can get the jury up here so we can start going through the process.

Any other matter about how we are going to conduct the matter?

MR. BLOOM: Yes, one more. That at time, when the questioning of the jurors is complete, we would like to have some kind of recess at the Court's choice. We just don't want to discuss amongst us, in front of the jury, what jurors we want to seek to keep and which we seek to challenge.

We would like to be able to, the three of us, go into one of the conference rooms and have that discussion out of the presence of the jury.

MR. BARTLETT: And I have offered to Mr. Bloom and Mr. Fox and Ms. Waters that we have the room right around the corner outside if the Court would allow them, they are more than free to go in there to discuss it.

THE COURT: You folks talk so loud you can't sit there and talk like most cases that I hear when you discuss who you want to strike and who you don't want to strike.

1    MR. BLOOM:  I don't want to risk any of the jurors

2  hearing or seeing my body language.

3    THE COURT:  I am sure they will probably see that

4  anyway.

5    MR. BLOOM:  I don't want them to see that.  I don't

6  want them to see we might be unhappy with a particular juror

7  who winds up being seated.  That's inappropriate, and there's

8  no need for it.  All we are asking is we be able to step out

9  of the courtroom and have a discussion.

10    THE COURT:  Do you understand how the striking will

11  take place?

12    MR. BLOOM:  I think I do.

13    THE COURT:  You will be given a sheet and you will

14  strike from the sheet.  It will be a simultaneous striking

15  between you and the government.  And you will utilize whatever

16  amount, number that you have.  So you are thinking you need to

17  have some brain storming to do that?

18    MR. BLOOM:  Sure.  I am not talking about an hour.  I

19  am talking about five, six, seven minutes.

20    THE COURT:  You will be given a chance to do that.  I

21  thought you might have better luck looking at the folks there

22  as you go through that, but you don't need that, you want to

23  send somebody back to the door to look at them, I suppose.  I

24  don't know how you do it.  I normally have them stay in

25  position as you go through the striking process.  You prefer

1  not to have that?

2          MR. BLOOM:  Partly yes and partly no.  We just want a

3  few minutes where we may have a disagreement between us, and

4  we want to be able to air that without them alluding to that

5  we have a disagreement.  That's all, just a few minutes.  I am

6  talking five, seven minutes.

7          THE COURT:  Anything else?

8          MR. BLOOM:  I don't think so.

9          THE COURT:  Anything from the government?  Anything

10  we need to take up?

11          MR. FRIEDMAN:  Not before we seat the jury.

12          THE COURT:  There were some motions filed here this

13  morning.  I haven't had a chance to go through all of them and

14  deal with the testimony, but I mentioned how we wanted to do

15  that.  I asked you to do, as you know, when your witnesses are

16  going to be called, you will give the other side -- before

17  that witness is called -- the name of that witness, the gist

18  of that testimony, the exhibits you intend to use with that

19  witness, and you can make these objections and deal with that

20  matter each time a person is called to testify.  We will do it

21  in a fashion that we don't interfere with the jury, because

22  you will have it in a timely fashion and we can raise those on

23  the break, over the noon hour, at the end of the day, whatever

24  might be the case.

25          So I see no need to keep raising these arguments about who

is going to say what and what they are going to say and to

what extent. Some of these I don't even know if they are

going to be called.

I asked for an updated witness list this morning, and

that's what I want to know, who are you going to call, not who

you got on the list that potentially might be here and all

that. All right.

MR. BLOOM: There is an issue. The government

filed -- and we received it about 5:30 p.m. on Friday -- a

motion, the determination of which may well affect what we

will be saying in opening remarks. So that doesn't have to be

dealt with now, but it should be dealt with before opening

statements.

THE COURT: Which one is that in particular, and I

will take a look at that.

MR. FRIEDMAN: It's titled: Motion in limine to

exclude references to complaints against agents and to the use

of agents notes or reports. It's docket 293.

THE COURT: It would sound like this is something,

Mr. Bloom, that you are intending to raise in terms of opening

statement?

MR. BLOOM: I had not shared with the government what

I intended to say in opening remarks, but apparently in

anticipation of some concerns they might have, they filed this

motion.

1      THE COURT:  I understand, but you can answer my

2  question:  Do you intend to raise that?  If you don't intend

3  to raise that in your opening statement, then I don't need to

4  deal with that right now.

5      MR. BLOOM:  Yes, I do intend to raise some of the

6  issues to which they refer.

7      THE COURT:  All right, okay.

8      MR. BLOOM:  Also, there was some back and forth about

9  the hours of the proceedings and the days of the week.

10     THE COURT:  Let's put it this way, as far as this

11 trial, we are going to go through the whole week, through

12 Friday.  The hours I will utilize will depend on when I

13 empanel this jury and find out a little bit about them before

14 I make that determination.

15     MR. BLOOM:  I do notice that a couple perspective

16 jurors are as far south as Vancouver; that's quite a trip.

17     THE COURT:  We always get them from there.

18     MR. BLOOM:  I am not saying good or bad, I am just

19 saying it's a lengthy trip.

20     THE COURT:  It might be if we start early.  I

21 wouldn't think we'd start any earlier than 8:30.  Whether we

22 shorten it in some way, what do we do about the noon hour, and

23 we talked about that a little bit.  If I recall, both sides

24 were in agreement with making some effort to do that.

25     MR. BLOOM:  There was some back and forth and some

1   options.

2       The reason I ask, for the attorneys we can deal with

3   whatever it is.  But Ms. Waters and her partner have a

4   three-year old daughter, and it really is logistically very

5   difficult dealing with her, her bedtime, her waking time.

6   Regularity is one thing, and frankly the later the better for

7   Ms. Waters.  A half hour makes a big difference.

8           THE COURT:  What do you mean, in terms of starting?

9           MR. BLOOM:  Yes.

10          THE COURT:  Anything else?

11          MR. BLOOM:  No.

12          THE COURT:  All right.  Then are we ready to bring

13  this jury up?

14      Let me mention again about the seating.  It's not to keep

15  the public out so you can't sit and hear and see what's going

16  on.  I can't get the King Dome or Tacoma Dome for this trial.

17  This is it, what I have right here; this is the size of it.

18  You will be accommodated the best we can, but we are going to

19  ask you to let the jury be seated first.

20      We will go through that process.  If there are any seats

21  left over after the jury is in here, you are welcome to those

22  seats.  Once the jury is empaneled, all of them will be here,

23  so that whole section will be open.

24      All right.  We will be in recess until we get the jury.

25          THE CLERK:  All rise, Court is in recess.

(Brief recess.)

THE CLERK:   This is in the matter of the United States of America versus Briana Waters, Cause CR05-5828FDB.

Counsel, please make an appearance for the record.

MR. FRIEDMAN:   Good morning, Your Honor, Andrew Friedman for the United States.

MR. BARTLETT:   Mark Bartlett for the United States. Also seated at counsel table is FBI Special Agent Ted Halla.

MR. BLOOM:   Good morning, I am Robert Bloom, one of the attorneys for Briana Waters.   This is Neil Fox, her other attorney;  and this is Briana Waters.

Thank you.

THE COURT:   All right.   The first thing I would like for you to do is stand as prospective jurors, raise your right hand, so the clerk can administer the general oath.

(Prospective jury panel duly sworn.)

THE COURT:   All right.   You may be seated.

You have been called here to help us out with this case. This is the system.   We need folks like yourselves to give of your time and to hear the evidence and decide the case.

The length of this trial, to give you the best guess, will be around three weeks.   I think that's the outside that they are telling me.   I don't know how to gauge it any better than that, but that's the timeframe that will be involved.

I ask you to keep that in mind as we go through this.   If

that becomes problematic in some way, we will discuss it.

The trial, to give you the gist of what this is, the allegations filed here is one of conspiracy and crimes that flow from that. It is alleged here that this defendant, Ms. Waters, was involved in this conspiracy; and that conspiracy was to commit arson and other crimes supposedly in an effort to advance the cause of environmental protection and animal rights. You may have heard things like this referred to as eco-terrorism, and we will talk a little bit more about things of that nature. And being a member of that conspiracy, she is also charged with aiding and abetting the possession of an unregistered destructive device. She's also charged with aiding and abetting, on May 21, an arson at the Center for Urban Horticulture at University of Washington in Seattle. She's also charged with aiding and abetting the use of this destructive device in the commission of that arson.

You will be called upon to decide this case.

(Voir dire commenced and reported.)

THE COURT: All right, this looks like it might be a good spot to take a recess and give you a chance to grab a sandwich. I am going to ask of you now as you go about your noon hour, not to discuss anything, try to find out anything, try to talk to anybody. If anybody should come up to you to talk to you about what's going on here, I hope you'll turn them away.

1    If they don't listen to that, that you inform the Court as

2 to any sort of contact.  Wear your buttons so everybody can

3 see you, and they should stay away from you.

4    After you've gotten your lunch, I will have you go back to

5 the jury assembly room and we will get you from there.

6    1:30 will give you about an hour to get a sandwich.  Will

7 that work?  We will reconvene at 1:30.  I ask you now if you

8 would file out and go to lunch, and I will see you back here

9 hopefully at 1:30.

10    (Prospective jury panel not present.)

11    THE COURT:  All right.  You may be seated.  I have

12 received some challenges for cause, and I will look at these

13 matters and deal with this once the jury is back in place.  I

14 would also ask for you, beyond that, to maybe consider at this

15 point in time, as you mentioned you wanted time to deal with

16 your peremptories, now is the time to utilize that to come up

17 with your positions on those various things, at least the ones

18 that are left.

19    MR. FOX:  May I address the Court?  Three brief

20 things.  One, we will probably provide you, as well, with some

21 challenges for cause after we meet for two minutes.

22    THE COURT:  Get them to me as soon as you can and I

23 will consider them, so when the jury comes back I will be

24 ready to deal with that.  Don't wait until they come back to

25 give them to me.

1        MR. FOX:  If somebody could answer the door.

2        THE COURT:  We have somebody on duty for that.

3        MR. FOX:  I wanted to very briefly make a record

4   about something.  I wanted to point out we had been informed

5   that there were a lot of people that were not able to come

6   into the courtroom.  I understand that the Court had two

7   chairs brought in, and at the beginning of jury selection

8   three spectators were allowed in, but the record should

9   reflect there were a large number of people denied entrance

10  who were told they could not come in.  I would just point out

11  that there's about 20, 15 --

12       THE COURT:  Did they tell you why they were told they

13  could not come in?

14       MR. FOX:  Because there was no room in the courtroom.

15  There's about a 15 foot area in front of the tables where we

16  could have moved the tables up and could have set more chairs

17  up.  And for the record, we believe that this violates the

18  First Amendment right of public access.

19       THE COURT:  What are you saying, you can't see what?

20       MR. FOX:  That the members of the public and media

21  have a First Amendment right to be present during the jury

22  selection.  I am making a record.

23       THE COURT:  All right.

24       MR. BARTLETT:  Since we are making a record, just to

25  clarify, when he says there were a large number of people, I

1    would like to have a number.

2          MR. FOX:  We were told by the security people that

3    there were like 25 people that were denied access.  So I am

4    making a record.

5          THE COURT:  I understand.  Like I say, and I told

6    you, and I thought I answered that at the outset, but I guess

7    you make an exception every time you go.  Can I say you have a

8    standing objection?

9          MR. FOX:  I understand.  I want to be able to make

10   the record, okay?

11         THE COURT:  All right.

12         MR. FOX:  The other thing, with all due respect, I

13   would object at the outset of jury selection to the Court

14   using the term eco-terrorism.

15         THE COURT:  Okay.

16         MR. FOX:  That term brings a lot of emotions to the

17   surface for the jurors.  This is a case not about

18   eco-terrorism.

19         THE COURT:  It might, and it might also get the

20   answer from some of those folks back there.

21         MR. FOX:  I understand, but I am making an objection,

22   and on that basis I would ask for a mistrial.

23         THE COURT:  It's denied.

24         MR. BLOOM:  A couple things.  We will get to you

25   quick in the next few minutes our challenges for cause.  The

1 clerk asked us, and I guess asked the other side for

2 questions. We have not in any way been able to prepare the

3 questions. We had hoped to do that over the lunch break and

4 give you proposed questions. We had to pay attention.

5 THE COURT: I understand, Mr. Bloom, and I listened

6 to that. But also, as these questions are being answered, you

7 have pen and paper there. You can note down what you want to

8 raise about these things.

9 MR. BLOOM: I have done that.

10 THE COURT: Then I need you to get them to me. We

11 can't conference after everything we do here.

12 MR. BLOOM: We each made notes about what we want to

13 talk about, but we have to put them into some bad handwriting

14 questions.

15 THE COURT: I am trying to get you two to work

16 together, and you can do different things, and one keep up

17 with this and one keep up with the other thing.

18 MR. FOX: We will get the questions in the next 10 or

19 15 minutes.

20 MR. BLOOM: No, we can't do that.

21 THE COURT: Thank you. We will be in recess until

22 1:30.

23 THE CLERK: All rise, Court is in recess.

24 (Luncheon recess.)

25 THE COURT: All right. You may be seated.

1    I believe that a follow-up question came from the

2  government. I have not seen any from the defense.

3    If you have any, I would like to have them submitted at

4  this time.

5        MR. BLOOM: We do not have them ready. As I

6  indicated to the clerk, we need about 25 or 30 minutes; that's

7  all we need.

8        THE COURT: You had the lunch hour. What have you

9  been doing?

10       MR. BLOOM: I took about eight minutes to have lunch,

11  and then we first discussed our challenges for cause, and now

12  we are discussing what jurors we want and don't want. And

13  based upon that determination, we will be able to tell you

14  what questions we have.

15       THE COURT: I want the follow-up questions.

16       MR. BLOOM: We want to do it all. Ms. Waters is

17  facing the rest of her life in prison. And all we are asking

18  for is a half hour to get it together, so that we can have a

19  fair jury to decide the issues that have to be decided. We

20  are asking for some consideration. I don't quite understand

21  why we can't get it.

22       THE COURT: Let me ask you a question, Mr. Bloom: 30

23  minutes, you can have me every question you want me to ask as

24  a follow-up to these jurors?

25       MR. BLOOM: Yes.

1     THE COURT:  You will have them directed as to a
2  particular juror?
3     MR. BLOOM:  Those that are particular, yes.  Those
4  that are general, yes, too.  We will have everything to the
5  Court in a half hour.
6     MR. BARTLETT:  I have no objection.
7     THE COURT:  At 2:00, give me the questions.
8     THE CLERK:  All rise, Court is in recess.
9   (Recess taken.)
10    THE COURT:  All right.  You may be seated.
11   I am going to go through these questions, the follow-up
12  questions to the jury.
13   As to the defendants, I was having trouble reading some of
14  those.  I understand.  I write the same way, but I need to
15  know what it is saying.
16   We were talking about No. 6, in terms of the first item.
17  Do you have a copy?
18    MR. FOX:  A copy of the questions I handed up, no,
19  Your Honor.
20    THE COURT:  Because some of these would appear that I
21  have asked, but I may go about it another way.
22   Let me put it this way.  We have the list you submitted.
23  I will ask the questions I am going to ask off of it, then I
24  will file it with the clerk.  So all of your questions will be
25  there in the form that you asked.

Now, I think we are ready for the jury to continue?

MR. FOX:  Are you able to read what I wrote, Your Honor?

THE COURT:  Well, unless you added something different than what it was I sent the clerk to ask you.

MR. FOX:  I didn't add anything.

THE COURT:  If I can't decipher it, I will beg for you, okay.

MR. FOX:  Okay.

THE COURT:  Then we are ready?

MR. FOX:  Then the challenges for cause.

THE COURT:  I will deal with that.  I can deal with that now, if you want to make a record.

MR. BARTLETT:  I would suggest we listen to all the questions, because there could be a challenge for cause that could come up from his questions.

THE COURT:  I can't answer that until we put the questions to the jury.

MR. FOX:  Sure.

THE COURT:  Let me see if I have anything else I can't read here.

One question that I probably won't put to the witness, that was the one about the one that had a commitment of March 12.

MR. FOX:  Your Honor, the only reason for that is in

1  case, for whatever reason it takes longer, plus the

2  deliberations.  I have been in trials where jurors have had

3  plane tickets and they just took off in the middle of the

4  trial.

5         THE COURT:  I am not going anticipate that problem.

6  Let me say this, the jury is coming back, and I am going to

7  have them seated first.  So I am going to ask you to give up

8  your seats for now and see where they end, and then you can

9  come back and take up your position.  But I need them to

10  occupy seats right now.

11      You are making your challenges for cause.  That will be on

12  the record the same way.  What I will do about it will be by

13  is just excusing you.

14         MR. FOX:  If you grant one of the prosecutors' for

15  cause, and we disagree with it, is there a procedure for us

16  to --

17         THE COURT:  You can make a written record if you

18  disagree with it.

19         MR. FOX:  A written record.

20         THE COURT:  I don't want you speaking when the jury

21  is here.

22         MR. FOX:  I understand that, but sometimes they are

23  done off the record, out of the presence of the jury, but on

24  the record.

25         THE COURT:  If you disagree, make it known by

1  writing.  If I need to take it up beyond that, I will do that,
2  but I will do it at a time different than in the middle of
3  this.  That's all.  I want you to make a complete record.  I
4  would like for it to be written as much as possible, so you
5  can take it wherever you want to take it.
6           MR. FOX:  So there would not be a trial on the
7  challenge for cause at all?
8           THE COURT:  No, the Court will rule.
9           MR. BLOOM:  Let's say --
10          THE COURT:  I don't know any other way to tell you.
11 If it's made, I will either grant it or deny it.
12          MR. BLOOM:  If you grant it, then the jury leaves and
13 we are stuck.  No matter what record we made -- let's say we
14 want you to ask further questions; we don't have that option.
15          THE COURT:  If I excuse them, there will be no
16 further questions.
17          MR. BLOOM:  That's what I thought.  Mr. Fox was
18 asking, if they made a request to excuse a particular juror
19 and that gives us no opportunity to respond as to why that
20 should not be granted.
21          THE COURT:  Mr. Fox, if you want to take it beyond
22 that, I am going to invite you to take it to the Ninth
23 Circuit.  I am going to tell you, I am going to grant it or I
24 am going to deny it; or I won't deal with it at all and the
25 record that you made that motion, for cause, it will be on the

1  record.  You have submitted a written document to me, who you

2  think should be excused.  The government's done the same

3  thing.

4        MR. BLOOM:  Right, and we have not had the

5  opportunity to respond to the government's requests.

6        THE COURT:  Okay.

7        MR. BLOOM:  We object to that, and we would like to

8  have some kind of procedure whereby we can do that.

9        THE COURT:  I don't know why you don't understand my

10  answer.  My answer is I will grant or deny, end of question.

11  We are going to move on.

12        MR. BLOOM:  We think that's wrong.

13        THE COURT:  I know what you think.  What I am going

14  to ask of you is this, Mr. Bloom:  When I make a ruling,

15  accept it, and let's move on.  Make your record.  Let's move

16  on.  I don't want to stand and argue about it all day.

17        MR. BLOOM:  That's what I just did.

18        THE COURT:  But you won't stop at it there.

19        MR. BLOOM:  I just want to protect my client.

20        THE COURT:  You are going to get a chance to

21  represent your client.  I am going to make sure you get a

22  chance to do that, but you are going to have to let me run

23  this courtroom.

24     All right.  Bring them in.

25            (Prospective jury panel present.  Voir dire

1  continued.)

2      THE COURT:  All right.  Now we are down to the

3  parties exercising what they call peremptory challenges.  They

4  will be given sheets to do that.  They will do what I call

5  look you over, see which one we ought to keep and which ones

6  we ought to let go.  That process will take a little while.

7  What I would like for you to do is remain in place so they can

8  look you over and then they will make their strikes.  Once

9  they have done that, I will come back on the bench and tell

10 you who will be asked to remain and the ones that will be

11 excused.  That's the way we will do that process.  So I will

12 disappear from the bench as they do that.  You don't have to

13 get up.  Just stay right there and let me know when it is

14 time.

15     (Pause.)

16     THE COURT:  All right.  You may be seated.

17    I am going to read off now the following names.  As your

18 name is called, you will be excused from this trial.  I will

19 ask you to go back to the clerk's office to see what they have

20 for you from there.

21     (Jury was seated.)

22     THE COURT:  All right.  Let me ask the government, do

23 you accept this jury as constituted?

24     MR. FRIEDMAN:  We do, Your Honor.

25     THE COURT:  All right.  Defense.

1          MR. BLOOM:  Yes, we do.  We have something to say,

2     but we accept the jury.

3          MR. FOX:  We have something to take up outside the

4     presence of the jury.

5          THE COURT:  It doesn't involve them sitting here.

6          MR. FOX:  No.

7          THE COURT:  I will give you a chance to say a lot of

8     things.  I am trying to get this jury so we can get started.

9          MR. FOX:  I understand.

10          THE COURT:  Then I need you 14 to stand and be sworn.

11    You will be the ones that will try this case and decide this

12    case, so if you would stand and raise your right hand to be

13    sworn.

14      (Jury panel duly sworn.)

15          THE COURT:  All right.  You may be seated.

16      I am going to give you your first break.  Before I do

17    that, the rest of you, it is apparent that we won't need your

18    services for this trial, so you will be excused.

19      I will ask all of you if you would go back to the clerk's

20    office to see what they have for you there, and you will be

21    released from that point.  I thank you for coming.

22      You folks will get your first break now.

23      All of your breaks will be taken in the jury room, so you

24    will go in there.

25      The clerk will tell you about your belongings.  You can

1   leave them in there.  The door will be locked.  The door on

2   the other side, we will make sure that things are locked safe

3   under lock and key.  If there are any problems, I expect you

4   to let the staff know so we can address those things.

5       Right now, just take a break.  Remember, you haven't heard

6   anything.  Just take a break and wait for the next

7   instruction, and I will get back to you shortly.

8       (Jury not present.)

9           THE COURT:  You may be seated.

10      One of you, Barb, go in there and see about the jury and

11  the other side door and all that.

12      Now, it's 3:15, the question is where do we go from here?

13          MR. FOX:  May I put something on the record, Your

14  Honor?

15          THE COURT:  All right.

16          MR. FOX:  Your Honor, I guess we accepted these

17  jurors as being qualified, but we did have an objection to the

18  state's use of a peremptory challenge against Ms. Womack, No.

19  28, the only African American in the jury pool.  We believe

20  that that was an improper exercise of a peremptory challenge.

21      I noticed this jury pool was mostly white.  There was one

22  person with an Hispanic surname.  There's one African American

23  woman.  And the prosecutor's exercised a peremptory challenge

24  against her.  We believe there's no evidence of any type of

25  bias, even against the government, from her answers; and we'd

1  ask the prosecutor provide a race neutral explanation for why

2  they challenged her.

3          MR. BARTLETT:  Your Honor, I would point out I

4  believe we do have Mr. Martinez on the jury.

5          THE COURT:  I understand.

6          MR. BARTLETT:  With regard to Ms. Womack, off the top

7  of my head -- I don't even have my notes in front of me -- I

8  believe she indicated she's 44 years old.  She's currently

9  unemployed.  It was unclear from her answer exactly what she

10  has been doing.  She likes to watch a lot of TV.  She's been

11  engaged to the same man, as I understood it, for the last 12

12  years.  It appeared that she did not have the types of roots

13  in this community, and unable to make the type -- the kind of

14  decision maker that the United States was looking for.

15          MR. FOX:  Your Honor, Ms. Womack grew up in Tacoma.

16  She went to college in upstate New York.  She's gone to school

17  a lot.  She has worked in the entertainment industry.  The

18  fact that she has a relationship for 12 years or so, and

19  hasn't been married to that person, that's not a race neutral

20  explanation.  That's something that has nothing to do with

21  someone's ability to serve as a juror.

22          THE COURT:  You made your motion.  I didn't find

23  anything to say there's anything wrong here, so I am going to

24  leave this jury as constituted; but your motion is there.

25  It's subject to review.

1     MR. FOX:  Of course.

2     THE COURT:  But I don't see any reason to come to a

3 conclusion or anything sinister about that strike.

4     A couple things, let me ask this question, whether we can

5 get very much done, as far as opening.  Maybe we can get one

6 in before the end of the day.  I would like to recess this

7 matter, I told you, around 4:30, and that's what I would like

8 to do.

9     I don't know how long of an opening.  I know it was

10 mentioned like an hour and a half.  I am trying to understand

11 what you can talk about for an hour and a half, but it seems

12 to me that this matter could be wrapped up at least by 4:30.

13 That's an hour and 15 minutes.  I don't know what you are

14 going to do with the other 45 minutes you should have left

15 from that.  So let me hear from you.  I don't like to have

16 them broken up.  I like to have them go at the same time.

17     We have a few motions we could probably address, and we

18 could take up some preliminary matters that way and have you

19 both argue your case, your opening in the morning.  How does

20 that sound?

21     MR. FRIEDMAN:  That's what the government would ask

22 for.

23     MR. BLOOM:  As would us.

24     MR. FOX:  Would the Court still want us here -- if we

25 can take care of all these preliminary matters now -- do we

 1  have to be here at 8:00?

 2          THE COURT:  I want you here at a time for whatever

 3  your problem may be, that I can take care of it before I call

 4  the jury in the box.  I don't want you to show up five minutes

 5  before the time I want the jury there, to bring up a question

 6  I can't answer in five minutes, or you can't even say in five

 7  minutes.

 8      If you have things you want to bring up, you let me know

 9  when it is, and I will meet you here.  Let's work on that kind

10  of a schedule.

11      The other thing we haven't discussed any further, it's

12  been mentioned by Mr. Bloom, it seems like the 8:30 hour is

13  problematic because Ms. Waters would like to get back to be

14  with the baby.  I assume that's what's said.

15      If I don't shorten the hour, like I have indicated, then

16  we are going to go 9:00 to noon, 1:30; lunch is 12:00 to 1:30,

17  and I am going to recess around 4:30.  I am not going to cut

18  my time short to deal with it.

19      Now, I have given you the choice.  I think you are

20  choosing not to take that choice.  Am I correct in that, that

21  will be the procedure?

22          MR. BLOOM:  I remember when we originally had this

23  discussion, my recollection is that the prosecution talked

24  about 8:30 to 3:30.

25          MR. BARTLETT:  I did; but we will leave it in your

1 hands.

2 MR. BLOOM: How does this sound to the Court: 8:30

3 for preliminary business, 9:00 for the jury to 12:00, and then

4 1:00 to 3:30 for the afternoon session?

5 THE COURT: No, the only thing I am going to change

6 is the way I said. If I don't go with special hours, I want

7 the jury here at 9:00. I want you here with anything that you

8 may bring-- if you have nothing to bring up, I don't care, I

9 don't need to see you, okay; but if you have something to

10 bring up, don't show up at five to 9:00 and want to bring it

11 up.

12 MR. BLOOM: I agree.

13 THE COURT: That's what I am saying. I can even meet

14 you at 8:00, if that's what you want to do on things you want

15 to bring up. I can visit with you over the noon hour. I can

16 stay with you from 4:30 till we get through. I don't have a

17 problem with that. I just don't want you interfering with the

18 jury's time, having them blazing a trail in and out when we

19 can do things in their absence.

20 MR. BLOOM: So, jury 9:00 to 12:00, 1:00 to 3:30,

21 does that work for you?

22 THE COURT: 9:00 to 12:00, 1:30 to 4:30, that will be

23 the schedule.

24 MR. BLOOM: Excuse me, one second, Your Honor.

25 Can we make this suggestion? It has to do with getting

1 back for Ms. Waters to see and be with her child.  Could we

2 shorten the lunch hour by a half hour and end at 4:00,

3 instead?  Everybody would be happy, including the jury?

4 THE COURT:  I don't know if they would be happy or

5 not; I haven't talked to them yet.

6 MR. BARTLETT:  I have no objection to that, Your

7 Honor.

8 THE COURT:  You are suggesting 9:00 to 12:00, 1:00 to

9 4:00?

10 MR. BLOOM:  That's our suggestion.

11 THE COURT:  I understand.  I am going to get the

12 jury's suggestion, too.

13 Anything else we need to talk about as far as the time?

14 We should let them go, and I will see you here ready to give

15 your opening statement at 9:00.

16 MR. FOX:  There are pending motions.  Can we deal

17 with those this afternoon?

18 THE COURT:  I said we have some motions and things we

19 should take up.  We will let the jury go.  We will stay here

20 and work, and we will get that done and you will be ready to

21 give your opening at 9:00 in the morning.  Is that correct?

22 MR. BLOOM:  Yes.

23 THE COURT:  We will practice in the mirror tonight so

24 we can shorten the time.

25 MR. BLOOM:  I can't even afford a mirror.

1     THE COURT:  Have somebody time you.  Mr. Fox, he can

2  do that.

3     All right, bring the jury back.

4     (Jury present.)

5     THE COURT:  You may be seated.

6     Now, let me ask you this question:  This is how I intend

7  to run the case in terms of the time that we will have you

8  here to do your duty, that is, to have you here ready to go,

9  ready to take your positions where you are now, at 9:00 each

10  morning, with a break in the middle of the morning.  Recess

11  for lunch from 12:00 to 1:00.  Have you back here at 1:00, and

12  go from 1:00, with a break in the afternoon, to 4:00.  Then

13  let you go for the day.  We will break around 4:00, whatever

14  works as close as possible, and let you go for the day and

15  come back each day; and we will do it this way until this case

16  is over with.

17     Does that fit your schedule pretty good in terms of making

18  it convenient and comfortable for you?

19        (Jurors nodding.)

20     THE COURT:  That's the way we intend to do it.  You

21  will notice you have 14 there, which means only 12 of you will

22  decide the case; two of you will be eliminated.  What's

23  happening here, I am not going to tell you which two, because

24  the names will go in the wheel, and whatever names come out

25  will be the jurors that won't decide the case.  I don't want

you to expect to be that two that will come out of there. So
I want to have all of you give your undivided attention,
because you may be going into the jury room. That's the way
we will get down to 12 at the end of the case.

As you go about your business tonight, as you go home, you
may have folks saying "what have you been doing all day;"
don't talk to them about the case. Don't think about it.
Don't read any news articles. Don't do anything to find out
what's going on.

Everything you need to decide this case will be given to
you here in this courtroom. It's on the government to prove
to you, in that fashion, this lady's guilt. I want that to
explain to folks why you can't talk to them. Don't let
anybody talk to you. Tell them you can't talk.

When you are going up and down the hallway, if somebody is
trying to talk to you or trying to say something, I want you
to report that to the Court.

When you are in the courthouse, go directly to the jury
room, so I can keep you out of harm's way. I am not trying to
make you antisocial, but I don't want anything to influence
your decision here or cause you to make a decision but the
evidence that you hear here in this courtroom. That's what
will be your charge throughout this whole case.

All right, I want you to have a good evening. I will see
you ready to go right there at 9:00 in the morning.

1       JUROR NO. 1:  Can I ask a question?  Can we take

2   notes?

3       THE COURT:  Let me explain that.  I hope you haven't

4   taken any yet because you haven't heard anything.  You can

5   take notes, but I want you to rely on your own notes.  When

6   you take your notes, each day when we recess for the day, you

7   will leave your notebook on your chair and they will be

8   protected.  You will take nothing home or anything like that.

9   If you are going to use that notebook tomorrow, you can leave

10  it in your chair.  It will be right there when you get back.

11      JUROR NO. 3:  If you start taking notes, and you do

12  go into the deliberation, are you allowed to take your notes?

13      THE COURT:  Yes, I am going to give you all these

14  instructions.  You are way ahead of me now, but I am going to

15  give you the instructions on the law and how to use your

16  notes.  That will come after you've heard all the evidence.

17  You will get all that.

18      Right now, I want you to sit, listen, make your notes and

19  keep them to yourself, and give these folks your undivided

20  attention.

21      Okay.  All right, see you in the morning, right there at

22  9:00, hopefully.

23

24

25

1        (Jury departed for the day.)

2             THE COURT:   You may be seated.

3        Now, what I would like to do is deal with a few of the

4    motions.

5        Now that the jury has been dismissed, the public is free

6    to view these matters.

7        One question, do you need a break before we start messing

8    with the motions?  Is everybody is okay?

9        The first matter I want to take up is -- if I can find

10   it -- has to do with the opening statement and making

11   reference to -- maybe I might have to take a recess.  I don't

12   believe I have everything here I thought I had here.

13       I think it had to do with the defense having filed a

14   complaint with the Inspector General against two of the FBI

15   agents.  I guess the issue is whether you can file something

16   and then talk about what you filed.  That seems to be the

17   issue here as to setting up the straw man and knocking him

18   down I guess.  So let me hear exactly why you need to refer to

19   anything like that in your opening statement?

20            MR. FOX:   Actually, the government in its response to

21   our letters to them on this issue have suggested that we file

22   a complaint with the Office of Inspector General.  So I am not

23   sure why they are so surprised such a complaint was filed.

24            THE COURT:   That doesn't answer my question.

25            MR. FOX:   We have no intent on bringing out the fact

that a particular complaint had been filed.  But I do believe

that we are entitled to bring up the case agent's biases by

cross-examining the agents --

THE COURT:  Sure, you can bring up the fact that you

think they did the best work or sloppy or whatever; but filing

the complaint itself --

MR. FOX:  But their fear of lawsuits and their fear

of internal disciplinary procedures being taken against them

is certainly fair game for cross-examination under the Sixth

Amendment.  So we are not going to bring up the fact that:

Isn't it true that there is a pending complaint against you?

But we do intend to bring up their legitimate fears that what

they have done may result in discipline being imposed against

them.

THE COURT:  If you cross-examine them about their

work and what they might fear, that's one thing.  I am talking

about opening statement and making reference to the fact that

they have got a complaint filed against him for whatever

misconduct.  That sounds like it's in the area that the Court

has ruled on as far as this trial.

MR. FOX:  Quite truthfully we haven't thought about

that until they filed a motion to --

THE COURT:  Then that settles that.  There's no

reference to be made to that in that way.

The government has got another motion here asking that the

1  FBI disclose something to do with a parking pass.  I don't

2  understand that.  Somebody explain to me what that's about.

3          MR. BARTLETT:  Your Honor, there was an internal

4  administrative matter with one of our witnesses.  The FBI will

5  not release any files relating to this.  I assume that the

6  defense may want to examine this.

7      All we are asking is that the Court order the FBI to turn

8  over the file to you so you can take a look at it to see

9  whether or not this issue involving a parking pass is worthy

10 of cross-examination.

11         THE COURT:  You mean whether the defense should have

12 the right, kind of a disclosure type --

13         MR. BARTLETT:  Exactly, Your Honor, and we don't have

14 it.  The FBI won't give it to us, and I haven't seen it.

15         THE COURT:  Is that a request, do you want to see it?

16         MR. FOX:  Yes, Your Honor.

17         THE COURT:  I will order them to let me see it, and I

18 will tell you.  I don't know anything about what this is.

19     Some seem to go to, one motion is asking me to order an

20 interview, to grant the defense an interview of the witnesses,

21 the codefendants in this matter.  Let me hear the basis that I

22 should do that.  Let me ask you this, anybody prohibiting

23 these witnesses from talking to you?

24         MR. FOX:  Well, both Jennifer Kolar and Lacey

25 Phillabaum and also Susan Savoie, who is a cooperating witness

with the government, and also Jennifer Kolar's attorney,

Michael Martin, have refused to be interviewed by us prior to

this trial.  We've basically been stonewalled.

Ordinarily, in federal practice, I agree with the case as

cited by the government that the Court doesn't have power to

order discovery interviews or discovery depositions; but these

are very special witnesses.  These are witnesses who have pled

guilty -- for two of them in this very court -- and agreed to

cooperate with the judicial process.

They are, in many ways, under the control of the

government and actually the control of the Court, because the

Court is the supervisor of the plea agreements.  And the Court

can enforce the plea agreements.

So these are very different witnesses, and they don't fit

into the category of some ordinary person who has the right to

refuse to be interviewed before testifying.

This Court has the power, both as a matter of due process

so that we have equal access to the people who are cooperating

with the government, and as a matter of the Court's Article

III powers to enforce the plea agreement to compel Jennifer

Kolar, Lacey Phillabaum, Susan Savoie, and Jennifer Kolar's

attorney to talk to us so we know exactly what they are going

to say about some of the key issues in the case.

THE COURT:  All right.

MR. BARTLETT:  Well, Your Honor, it's a little hard

to stand in front of this court and say that a cooperating witness, codefendant, is somehow a unique witness that this court never sees. In truth, if you were to take a survey of trials that occur in the Western District of Washington, virtually every trial involves cooperating codefendants testifying against their coconspirators.

To claim this is somehow some unique dilemma that this Court is uniquely facing is absurd.

Second, the Ninth Circuit case could not be any more clearer. It is beyond this court's powers. These are witnesses. They can choose or not choose to talk to whoever they want. They don't have to talk to me. They don't have to talk to the defense. That is their right.

They are under a plea agreement. All of them have been interviewed numerous times. We have turned over those 302s. As was our right, we could have sat on their reports and not turned them over until after they testified.

We turned them over months ago. They are totally prepared. There might be some minor questions they have not been able to answer. As the government's motion indicated, there's no general right of discovery in federal criminal matters.

They have gotten all of their discovery. We are aware of our obligations under Brady and Giglio. What they are asking this Court to do is to violate what the Ninth Circuit has

1  specifically said is not allowed.

2          THE COURT:  Mr. Fox, let me ask you something, as to

3  discovery, other than you'd like the interviews, have you

4  received everything else, the plea agreement and all these

5  things?

6          MR. FOX:  We have.  For Mr. Martin, despite the

7  Court's invitation at the last hearing that I should tell

8  Mr. Martin that he doesn't need an order to talk to us, he's

9  not talked to us because he believes that his testimony or his

10  discussions with us would be privilege; but these are not

11  witnesses who are just simply witnesses.  These are people

12  that are under the control of the government and under the

13  control of the Court.  So they don't really have the right

14  just to refuse to cooperate.

15      I would suggest to the government they may want them to be

16  cooperative with us.  But if they are not cooperative with us,

17  it impacts Ms. Waters' ability to have a fair trial.  And it's

18  not right that the government has unbridled access to these

19  witnesses.

20      Ms. Kolar has been interviewed at least 16 times.  She's

21  required to be interviewed as part of her plea agreement.  All

22  we ask is that we have the same access.

23          THE COURT:  All right.  I agree with you that what

24  you are posing is unique.  I agree with that.  I don't agree

25  with you, because I don't believe that you are entitled to the

government -- if you would tell me and convince me that they
have blocked these folks talking to you and that these folks
are taking it on themselves, that's their choice to talk to
you or not.  I am not going to order that.  I don't think the
Court should order that sort of a thing.  They are under a
plea agreement to testify.  You may use that in the
cross-examination as you may deal with their credibility and
all the rest of it, but I am not going to order them.  There's
no prohibition here for them to talk to you.

       MR. FOX:  Part of the problem is --

       THE COURT:  I know what the problem is, Mr. Fox.
Once you present a situation to me, I am going to rule on it.
When I rule on it, I want to try to put an end to it and let
you then take it to the next level.

       MR. FOX:  Hopefully, we won't go to the next level.
The problem is I can't present that evidence to you because
the government hasn't given us full disclosure about the
relationship with these witnesses.  And the witnesses won't
talk to us; so there's no way we can know.

       THE COURT:  If they come here and testify in this
case, they have got to talk to you.  I am going to let you
talk to them in that way.  Unless there's another issue, that
one is at rest.

       MR. BLOOM:  You seem to be focused on the three
witnesses, and I am not asking you to reconsider that.  I am

1    asking you to consider our motion with regard to the attorney.

2              MR. BARTLETT:  Objection, Your Honor --

3              THE COURT:  It's the same thing.

4              MR. BARTLETT:  -- Mr. Fox was making the argument

5    here.  They don't both get to get up and argue to everything

6    before the Court.

7              THE COURT:  Mr. Bartlett, let me handle this.

8    Mr. Bloom, I don't want to go over these things over and over

9    again.  Mr. Fox will get up and make the argument, then you

10   come with something just a little bit different.  One of you

11   take the lead here.  I don't who is the lead here.  Mr. Fox

12   seems to be doing the most of it.

13       So Mr. Martin falls in the same category as any other

14   witness.  As long as they are not blocking that person from

15   being interviewed by you, that's as far as this Court is going

16   to take it.  I can't be any clearer than that.

17       I can't make them talk to you, and I am not going to order

18   it because I find no legal basis to do that under this

19   circumstance.  I see these cases all the time, and I see

20   witness's signed plea agreements, and come in here and turn

21   statements evidence all the time; so that's nothing new and

22   unique in that fashion.

23       All right.

24             MR. BLOOM:  First, I just want to object to

25   Mr. Bartlett interrupting me.  I hadn't interrupted him, and I

don't like him interrupting or doing it in a loud voice.  And
I would ask the Court to tell him not to do that any more.

THE COURT:  Mr. Bloom, we can prolong these things
because we can argue about things that don't make a difference
what this case is about.  I have told you about that burden
and all that.  At some point in time, it's got to get to the
evidence.

MR. BLOOM:  Of course.

THE COURT:  Okay.

MR. BLOOM:  I know you've made the ruling.

THE COURT:  But you never accept it.  I don't believe
you accepted very many rulings I have made here in this whole
case.  I understand you disagree with my rulings.  What I am
saying, accept them and move on.

MR. BLOOM:  I am.  I just want to make the record.  I
am not asking you to reconsider.  The record as to Mr. Martin,
I have not gotten a piece of paper with regard to
Mr. Martin --

THE COURT:  Should I stop and wait until you get
through?

MR. BLOOM:  I have a record to make, and I am
asking -- I am not asking you to reconsider.  You've made your
ruling.

THE COURT:  Mr. Fox just argued the motion that you
are talking about now.

1        MR. BLOOM:   What he didn't get to say -- and I can

2   ask him to say it.

3        THE COURT:   Go over there and ask him to say it.

4        MR. BLOOM:   Okay.

5        MR. FOX:   Your Honor, Mr. Martin has not provided us,

6   nor has the government provided us, with any record with some

7   of the key issues in this case.  So we haven't gotten the

8   discovery of Mr. Martin.  Mr. Martin takes the position that

9   everything is privileged.

10       THE COURT:   Did I not answer that?  Did I not answer

11  that in a written order?

12       MR. FOX:   No.  You orally said Mr. Bartlett did not

13  need an order to talk to us.

14       THE COURT:   Let me say it again.  He does not need a

15  court order to talk to you.  It's up to him to talk to you.

16  As long as the government is not preventing him from talking

17  to you, end of question.

18     Do you think that's settled now at this point?  As I

19  mentioned about the witnesses, remember how I mentioned how we

20  are going to handle the witnesses?  Is that clear to everybody

21  now?  Before the witness is called to testify, you will get

22  the gist of the testimony from that witness.  If there's any

23  exhibits to be used with that witness, you will get that.  If

24  any discussion needs to be taken up about that, and the

25  propriety of that, we will do that before that witness is

1  allowed to testify.

2     Remember all that?  That will be the procedure that I will

3  use on all of these witnesses, and I think it is clear.

4     All right, let's see if we can move on now to the next

5  question.

6             MR. BLOOM:  With regard to that, the prosecution has

7  informed us that after opening statements -- and I believe I

8  am correct -- that the first witness they intend to call is a

9  law enforcement ATF witness Comery.  I think we will get to

10  him, and I think we will get to other witnesses after that.

11  Could I request after Comery, what do they have in mind?

12             THE COURT:  I don't know how else to say this.  This

13  is what I expect them to do.  When I hear from you that they

14  didn't do that, I will take it up.

15             MR. BLOOM:  I am not complaining, because at most we

16  are going to get to him today, but now that the timing is

17  changed, there's going to be more than Comery tomorrow.  And I

18  would like to know that tonight so we can be prepared.

19             THE COURT:  Sometimes I don't believe you were at

20  that pretrial conference that I had.

21     All right, let's move on to the next.

22             MR. BLOOM:  I was.  Although the public was excluded,

23  I was here.

24             THE COURT:  You keep mentioning that.

25     The Defendant's discovery demands has to do with Robert

 1  Corrina and Kara Larson.  They are saying that they perjured

 2  themselves.  I don't know who's going to take that up, Mr. Fox

 3  or Mr. Bloom; one of you take it up.

 4          MR. FOX:  Your Honor, the government has answered.

 5  We asked for any agreements they made with Mr. Corrina and

 6  Ms. Larson who, according to the government's own story,

 7  perjured themselves.  And the government answered and said

 8  there are no agreements.

 9          THE COURT:  Is that answer good enough, unless you

10  see something to the contrary?

11          MR. FOX:  We will find out.

12          THE COURT:  They said they have turned over

13  everything they should turn over to you as it involves those

14  witnesses.  So that would seem to be a moot issue at this

15  point, anyway.

16      I think there was another issue, what I mentioned about

17  the complaint filed against the FBI and the Inspector General,

18  involving those same two FBI officers.  That was their notes

19  being somehow -- or the possibility of saying to the jury that

20  they will actually see those notes.  I think it comes up in

21  the area where there's a reason to say something, impeachment

22  in some way that would cause that to be an issue, something

23  different than what those notes reflect and that sort of

24  thing.

25          So any more to be heard on that?

1          MR. FOX:  Yes, Your Honor.

2     First off, I guess I am not sure exactly what the

3  government's motion is.  The 302 reports, in many instances,

4  have been adopted by witnesses.  I refer the Court to what's

5  been marked for identification as Defense Exhibit A-49, which

6  are the notes of Anthony Torres, Special Agent for the FBI,

7  where he records on February 24, 2006, Ms. Kolar apparently

8  reviewed the version of the 302 from the December 16 proffer

9  session and pointed out changes that were to be made.

10     So given the fact that Ms. Kolar reviewed the 302 and made

11  changes, it is our position that she adopted that; and that

12  that particular 302 is her statement essentially.

13          THE COURT:  Adopted in what way, she signed

14  something?

15          MR. FOX:  She reviewed it and made changes.  If you

16  review a document and suggest changes, and you don't change

17  other things, it kind of becomes your statement to that point.

18  It's an oral statement, oral adoption of the statement.

19     Secondly, certainly a witness can have his or her memory

20  refreshed by an agent's 302 report.

21          THE COURT:  That's not the question I am asking.  The

22  question is whether or not in opening statement you will be

23  saying to this jury that they will actually have these

24  documents in their hand.  That's what I am talking about.

25          MR. FOX:  Well, to the extent, first off, yes, we

1  plan on introducing that.  We know that --

2        THE COURT:  What I am going to suggest is this:  I

3  wouldn't tell them that you are going to be able to produce

4  something without knowing the answer.  I am saying, I would

5  advise you not to deal with that in your opening statement.

6  Deal with that in the usual fashion and try to get it in as an

7  exhibit or what have you, and I will take it up at that time.

8        MR. FOX:  May I consult with counsel for a second?

9        THE COURT:  You may.

10     (Discussion off the record.)

11        MR. FOX:  Well, Your Honor, we believe that in

12  particular some of the case agent's handwritten notes are

13  substantive evidence.  Substantive evidence of, as a U.S.

14  Supreme Court described it, slovenly police investigation.

15  They also would constitute present sense impressions and

16  recorded recollections, which are exceptions to hearsay.

17     So, in particular, Special Agent Torres's handwritten

18  notes documenting the five people that Jennifer Kolar

19  identified --

20        THE COURT:  I understand what you are saying,

21  Mr. Fox.  What I am saying is this:  I am not subscribing to

22  what you are saying now in terms of opening statement.  I may

23  disagree with you as to whether they should be admitted as an

24  exhibit so the jury can see it.  Because depending on how it's

25  being utilized.  I am not going to let you say the wrong

1 thing; or if you say the wrong thing, I am not going to let

2 you put error in the record and expect the benefit from it.

3         MR. FOX: So you are not ruling on it now?

4         THE COURT: I am saying I would stay away from it in

5 opening statement because of the problem it may bring up, but

6 I will decide that at the time. Remember how I said we were

7 going to handle the witnesses again. They will give you the

8 gist of their testimony, the exhibits they are going to use

9 and that sort of thing. We will get together, discuss it, and

10 I will tell you what I am going to do about that at that time.

11    Before any witness is called to testify, we will settle

12 those issues you are raising now at that point in time.

13         MR. FOX: Okay.

14         THE COURT: You won't be precluded from bringing

15 this. I am saying if you tell this jury something to expect,

16 that you can't produce, I am not going to let you benefit from

17 that by saying, well, mistrial or some other thing or motion

18 you may bring. Okay.

19         MR. FOX: Okay, thank you.

20         THE COURT: That's all I am saying.

21    Now, did we get through with the Corrina\Larson matter?

22         MR. BARTLETT: Yes, Your Honor.

23         THE COURT: Then the next one has to do with a person

24 by the name of Tiffany Tudder may testify, something to the

25 fact that she heard -- what she heard Ms. Waters say at one of

the gatherings, something to the effect that she believed in
all of what was taking place except bringing about injuries, I
believe, something along that line.

MR. FOX: Your Honor, based upon our investigation,
Ms. Tudder does not have an independent recollection of very
much. Therefore, we are simply asking for an offer of proof
before she testifies, so that the jury --

THE COURT: Offer of proof as to what?

MR. FOX: As to what her testimony would be.

THE COURT: Well, that's what I say how I will handle
the witnesses. I keep saying that.

MR. FOX: I filed the motion. I guess we could
reserve that issue until she testifies, to the day of her
testimony. We would ask that the government not bring that up
in opening statement because we think that the government
would then be tainting the jury by bringing up information
that's inadmissible.

THE COURT: You are well taken. My Bartlett, are you
going to bring this up in terms of opening?

MR. BARTLETT: Just a moment, Your Honor.

(Discussion held off the record.)

MR. BARTLETT: Based on our discussions with
Ms. Tudder, I am certain that it will be admissible. She's
not going to be here until this weekend, and we will remove it
from our opening.

1      THE COURT:  I think that settles that, I will handle

2 that the same way as I do any other witnesses in the matter.

3 All I can say to you, be careful bringing up things in opening

4 that you can't follow through on, as to what that may mean for

5 either side.

6    The next matter has to do with another exhibit.  I don't

7 know if we need to take it up today.  This is one that keeps

8 floating around, Exhibit 612 that deals with a pamphlet, I

9 believe, that Ms. Kolar turned over to the FBI that's got

10 Ms. Waters' name on it, Kolar's name, Phillabaum's name.

11      MR. FOX:  I think we can deal with it the same way.

12 I would ask it not be raised in opening.

13      MR. BARTLETT:  We are not going to raise it in

14 opening.

15      THE COURT:  We can settle that in the same fashion.

16    I believe these were all filed this morning, over the

17 weekend or something.  These are the new ones I hadn't seen.

18 I think I have seen the others.  We have been over them from

19 motions, to motions for reconsideration, to status conference

20 about them.  I have turned them every way but loose, so I

21 don't know what else to say about them, other than the Court

22 has ruled on these motions in limine.  The rulings are there.

23 Most of them I did with a written order, so memories wouldn't

24 lapse too much on me and all those kind of things.

25      MR. FOX:  I had two questions about the Court's

orders.  The first is I actually don't believe we received a

written order on the motion for reconsideration on the

destructive device issue.  I don't recall seeing that.

THE COURT:  I will have to look.  I have got a stack

of papers like this.  I will look in there to see if it's

there.

MR. FOX:  I think orally you said that, but I never

saw a written order.

THE COURT:  I will see if it's written.  If not, we

can talk to this young lady over here and she can pull it up;

but I am sure I ruled on it.

MR. FOX:  The second thing, and maybe I missed this

myself, I thought the minute entry was the Court was going to

issue a written order on the motions in limine from the

pretrial conference.

THE COURT:  I think what I told you was this:  As we

went through the pretrial conference, we were writing the

order at that time.  If anybody wanted to know what I said,

you can order it out from her, and everything verbatim would

be there.  I think that's what my answer would be.  That's my

standard answer.

MR. FOX:  I thought I saw something come across, a

minute entry saying there was going to be a --

THE COURT:  I don't recall that.  Do you need to

order that?

          MR. FOX:  I think maybe counsel and we can talk at
some point just to make sure we are on the same page, make
sure we all agree as to what you said.

          THE COURT:  Well, if you don't agree with what I
said, I can tell you again what I said, I think.

          MR. FOX:  I am not asking you to do that.

     The other thing we raised at the pretrial conference was
the issue of coconspirator hearsay.  We went round and round
about this, and the Court had asked me to write up, to send to
the prosecution the items from discovery which I thought they
were going to be offering under the coconspirator hearsay
exception.  I did that.  I have to be frank, I am not totally
clear from where we go from here with regards to that issue.

     I sent them something.  They sent me a letter back saying
they weren't sure that's exactly what you had ordered.  Maybe
the government can clarify where we are on that issue.

          THE COURT:  If they know, then I would think that
would shorten time.

     At some point I want to get it to the point where we can
present this to these folks who will make a difference here.
We can go around and around and nitpick forever, but it is
going to get to the point where we have to get it to them.

     If you know those questions, at the same time I mentioned
how we are going to handle the witness, those statements will
be coming in through witnesses; same answer.

1     MR. FOX:  Shall we deal with it the day of their

2  testimony?

3     THE COURT:  We will deal with it the day they are

4  going to testify, what they are going to talk about and what

5  exhibits to support that.  When I see that, I can say that's

6  not a coconspirator statement, that's something else; and I

7  will have to rule on it.

8     If they have it and can provide it, get it to them.  I

9  think the Court will be able to deal with any issues as they

10  come up.

11     MR. FOX:  That's a loose end, Your Honor; I am just

12  trying to tie it up.

13     THE COURT:  I can't close every end right now.  The

14  trial doesn't work like that.  I know you'd love to have it

15  like that.  If everything was so certain and without any doubt

16  here going on, then maybe we wouldn't have this kind of thing.

17  We could plug it in a computer and do some other things and

18  come up with another procedure.  We can't do that.

19     Any others?

20     MR. BARTLETT:  One final issue.  I was struck during

21  the initial voir dire this morning about how many members of

22  the jury pool had actually heard or read articles about this

23  case.  So I think it would be prudent for the Court to ask

24  both sides not to talk to the press until after a verdict is

25  reached in this case.  All the matters that the public needs

to know will come out in open court. I don't think there's
any need for either party to talk to the press outside of the
courtroom.

THE COURT: I don't see the need for that. I always
advise folks not to do that. I assume the press, if they are
writing about this, they have some interest in it and maybe
they would come here and see what's going on and decide for
themselves and write about that and not get everybody's spin
on what's taking place here. That's all I can ask of you.

If it gets to the point where the Court needs to take some
other action, I guess we will see.

Right now, I don't see any need to do that, but I would
expect you to conduct yourself like that. You are lawyers.
You are officers of the Court. I expect you to conduct
yourself that way. That's all I can ever say to lawyers.
They don't always listen to me, but that's what I say.

MR. BLOOM: I have one very small matter I am going
to ask the Court to deal with.

If the Court has not yet acted on the most recent CJA
voucher, I would ask the Court to do so. I am having some
real bill paying problems.

THE COURT: I deal with them the way I always deal
with them, in due course. Certain things I ask of the folks
that tell me about whatever is listed on the vouchers, and
then I act on them. That's how I do it.

1        MR. BLOOM: There was a letter from the standing

2  committee about 10 days ago. I just ask the Court to look

3  into it, please.

4        THE COURT: And you know I always deal with the

5  standing committee.

6        MR. BLOOM: Sure. I just wanted the Court to be

7  aware of the situation.

8        THE COURT: I am. Nothing will be held up that

9  shouldn't be approved. I guarantee you that.

10    Anything else?

11        MR. BARTLETT: Nothing, Your Honor.

12        THE COURT: Then I will see you folks back here.

13  I think we have decided -- well, I don't think there's

14  anything that should be taken up before the jury is in the box

15  at 9:00. If so, 8:30 will be the time that I will meet you

16  here. I will be here. Knock on the door. Get security.

17  Find somebody. But I want the jury in the box at 9:00 and

18  ready to go.

19  I will ask you to think about again what I said about

20  openings. I still say that at some point in time everybody

21  has got to stop talking so those folks can do their job.

22  Sometimes we don't want to stop talking because we don't want

23  folks to vote, but it's got to get to that.

24  So things that we need to argue about, let's argue about

25  them. But you might want to look at this case in terms of

things where now there's no real dispute.  As I understand
what Ms. Waters is saying, she was not involved in any of
this, and all of that.  So it's what she's got to say about
that, as well as the credibility of these other folks.  What
happened over there at the University of Washington, whether
the building caught on fire and all that, doesn't seem to be
an issue.  It seems to be in that realm.  Then that ought to
be the focus.  And what I am asking you to do is look at what
you are presenting and focus on the issues that this jury has
got to decide.

MR. BLOOM:  Sure.

THE COURT:  Anything else?

MR. BARTLETT:  Nothing Your Honor.

THE COURT:  All right.  See you in the morning.

THE CLERK:  All rise, Court is in recess.

(The Court recessed to Tuesday, February 12, 2008, at
the hour of 9:00 a.m.)

*    *    *    *    *

C E R T I F I C A T E


I certify that the foregoing is a correct transcript from
the record of proceedings in the above-entitled matter.


/S/  Teri Hendrix                    May 2, 2008
Teri Hendrix, Court Reporter              Date