1        UNITED STATES DISTRICT COURT

2        WESTERN DISTRICT OF WASHINGTON

3              AT TACOMA

4  UNITED STATES OF AMERICA,    )   Docket No. CR05-5828FDB
                                )
5         Plaintiff,            )   Tacoma, Washington
                                )   February 29, 2008
6  vs.                          )
                                )
7  BRIANA WATERS,               )   VOLUME 14
                                )
8         Defendant.            )
   _____)

9

10
                    TRANSCRIPT OF PROCEEDINGS
11        BEFORE THE HONORABLE FRANKLIN D. BURGESS
       SENIOR UNITED STATES DISTRICT COURT JUDGE, and a Jury.
12
   APPEARANCES:
13
   For the Plaintiff:       MARK N. BARTLETT
14                          ANDREW C. FRIEDMAN
                            Assistant United States Attorney
15                          700 Stewart Street, Suite 5220
                            Seattle, Washington 98101-1271
16
   For the defendant:       ROBERT BLOOM
17                          Attorney at Law
                            3355 Richmond Boulevard
18                          Oakland, California 94611

19                          NEIL M. FOX
                            Cohen & Iaria
20                          1008 Western Ave., Suite 302
                            Seattle, Washington 98104
21

22  Court Reporter:         Teri Hendrix
                            Union Station Courthouse, Rm 3130
23                          1717 Pacific Avenue
                            Tacoma, Washington  98402
24                          (253) 882-3831

25  Proceedings recorded by mechanical stenography, transcript
    produced by Reporter on computer.

1          FRIDAY, FEBRUARY 29, 2008 - 9:00 A.M.

2                        * * *

3      (Jury not present.)

4          THE CLERK:  This is in the matter of the United

5  States of America versus Briana Waters, cause CR05-5828 FDB.

6      Counsel, please make an appearance for the record.

7          MR. FRIEDMAN:  Good morning, Your Honor, Andrew

8  Friedman for the United States.

9          MR. BLOOM:  Good morning, Robert Bloom and Neil Fox

10  for Briana Waters, who is present.

11          THE COURT:  All right.  The issue came up yesterday

12  about Exhibit 745, I believe, and that has to do with the bank

13  statement of Justin Solondz.  There was a stipulation signed

14  by all the parties about that.

15      The issue was whether they have been offered.  I am trying

16  to frame now what this issue is about.  And I had my court

17  reporter pull the closing of Mr. Bartlett, around this issue,

18  and Mr. Friedman.

19      And Mr. Bartlett had referred to Exhibit 745, and the bank

20  account and the $200 withdrawal.

21      Mr. Friedman, in his argument, referred to the same

22  account, same Exhibit.  And Mr. Bloom raised an objection.

23  Mr. Bartlett said it was in evidence, and then it went on from

24  there.

25      And it went back to talking about the withdrawal and how

1  it reflected, in terms of the car rental, that's what that was

2  about.

3     That's what I reviewed about this, and then I will have

4  some questions on that.

5     So Mr. Bloom, evidently -- that was the objection, and I

6  think it came -- I don't know if it came from Mr. Fox or who I

7  it came from, but defense, that that exhibit shouldn't go to

8  the jury.

9       MR. BLOOM:  Yes, it's more than that.

10    You are exactly right, you outlined it exactly right.

11    Here is our position, although we considered the

12  possibility of a curative instruction, we are opposed to that.

13  We are asking that a mistrial be declared, for the following

14  reasons:  The prosecution has made the car rental issue their

15  centerpiece, and as the Court has pointed out, Mr. Bartlett

16  raised it, and not only -- I actually don't remember if

17  Mr. Bartlett put it on the screen when he was discussing it,

18  but I do definitely remember that Mr. Friedman, in his closing

19  argument, put it up on the screen for the jury to see.  I do

20  remember that.

21    Well, at least one of them did, I thought it was

22  Mr. Friedman.

23       THE COURT:  I don't remember anything appearing on

24  the screen on that.

25       MR. BLOOM:  Absolutely did, absolutely positively

1 did, no question, I saw it. I looked at it. I leaned forward

2 to look at it. No question it was on the screen.

3    THE COURT: All right.

4    MR. BLOOM: This is obviously a critical time. The

5 reason we oppose a curative instruction is because it will

6 highlight the issue. I thought about it. We discussed it,

7 and to highlight the issue at this time, would be very, very

8 damaging to Ms. Waters' case, and very helpful to the

9 prosecution's case, particularly, because we didn't get to

10 respond to it by the nature and structure of how closing

11 arguments are given.

12    We do not know and I do not take the position right now --

13 we do not know whether or not it was put before the jury by

14 the prosecution intentionally. I should say knowingly,

15 knowing that the document was not admitted. I don't know

16 that. I can't make that claim, but given the prior events in

17 this litigation, I do not discount that as a possibility.

18    We actually had the opportunity, and we, Mr. Fox and I,

19 considered whether or not we wanted to offer the Justin

20 Solondz document, because there is actually something helpful

21 to Ms. Waters' situation in it, and that would be that

22 Mr. Solondz made at least one purchase with an ATM card at

23 that store, at the Ralph's Thriftway.

24    So, we don't -- we think that a curative instruction will

25 inappropriately call attention to the issue. It's the

obvious, to use the courthouse cliches, that once it is done,

the unringing of the bell is not feasible and we believe that

the only remedy here is a mistrial, and we oppose providing a

curative -- what has been called a curative instruction.

THE COURT:  All right.  Mr. Friedman.

MR. FRIEDMAN:  Your Honor, first off, I can assure

the Court that this was not done deliberately.  The government

believed this Exhibit was in evidence; if we thought it was

not in evidence, we never would have tried to use it during

closing.  Precisely because of all of the problems it would

create.  It has some probative value.  It does not have as

much as Mr. Bloom suggests, and we would not seek to introduce

it if it were not in evidence.

I believe there is no grounds for a mistrial here.  The

Court should not give a mistrial.  Obviously, it is serious to

refer to an exhibit that is not in evidence.  But, this is an

exhibit that relates to Mr. Solondz rather than to Ms. Waters

directly.  And is of somewhat limited probative value, given

the more probative thing is that Mr. Corrina deposits $200 a

week later.

We do believe the Court should give a curative instruction

to the jury, just to highlight the fact to the jury it should

not consider this evidence.  There's also some sanction in

there that the jury will understand that the government

referred to evidence that it had not introduced, and probably

1   will draw a light inference from that, to be careful about

2   what the government said.

3      I think so the record is clear the best thing is for the

4   Court to instruct the jury not to consider the portions of the

5   argument that relate to that statement.

6      Thank you, Your Honor.

7        MR. BLOOM:  If I may, I just want to respond to that.

8   I think we are rather disingenuous to hear from the

9   prosecution it's not an important piece of evidence.  The

10   thrust of their argument is the car is the center piece, and

11   the flow, the chronology and the flow of this alleged $200 was

12   critical, and they emphasized.  They said the $200 came from

13   Justin, and then to Briana, and then to Corrina.  This was not

14   an isolated piece, this was a part of a very important --

15   according to them, a very important chain of circumstances

16   that nails Ms. Waters.

17      That's what they are saying.  To say that this was

18   something that was isolated, that was not particularly

19   important, I think that is not, actually totally contrary to

20   what their position was at the time they made the arguments,

21   both times.

22        THE COURT:  All right.  Well, the Court of course has

23   to make a decision as to what to do about this.  Mr. Bloom is

24   saying that this is such an integral part that it can't be

25   determined but one way that is totally unfair, and the only

1   answer to it is a mistrial.  And the government of course is

2   claiming that, and admitting that they referred to something

3   that had not been admitted, and that a curative instruction

4   would do that.

5       And of course the Court in weighing -- there have been a

6   lot of things regarding what things mean, as to -- I don't

7   remember how Mr. Bloom put it -- what do these things mean,

8   what do these things mean?  I think they are grasping at

9   straws, I think that's the term you used, that all that kind

10  of thing went into this.

11      I think it is obvious, even though it appeared on the

12  stipulation of documents that it would say one thing, that

13  even though the government shouldn't refer it to, the defense

14  had no objection to that material.

15      But it was not handled during the course of the trial and

16  it was not offered into an exhibit, so the Court is not going

17  to send it in as an exhibit.

18      I don't believe the government knowingly did this I say

19  that because you've stipulated to the admissibility of it; the

20  only thing that happened is that nothing was done about it.

21      So there was no reason for them to deliberately do that,

22  as I see it.

23      So how much probative value it has got, well it's in there

24  with a lot of other things.

25      But I am not going to grant a mistrial on this case,

 1  because I don't think it goes -- carries the weight to demand

 2  that.  I am going to let the jury decide the case, but I think

 3  a curative instruction to that extent should be done and

 4  that's what I am going to do.

 5      So I will ask you, if you want to speak to the form of

 6  this curative instruction, it seems to say that they should

 7  disregard that.  I don't know what else you can say but that,

 8  because it had -- it was not offered or admitted into

 9  evidence.  And that's what happened here.

10      And tell them how to disregard what they heard as to that.

11      That's what I intend to do, and I know you are excepting

12  to that.  And those are all noted, so I am denying the motion

13  as to a mistrial, and the Court will grant this curative

14  instruction.

15          MR. BLOOM:  May I just say two things just to

16  complete the record.

17      The Court suggested that there were, during my --

18  correctly so, that during my closing, argument there were a

19  number of things to which I described as grasping at straws.

20  The fact is, because Mr. Friedman used this, and I am very

21  confident that he put it on the screen, that is one I did not

22  get to respond.

23          THE COURT:  Well, I really don't recall that screen.

24  You say it was put on the screen; I just don't remember that.

25  I don't know how I can develop that other than take your word

1  for it.

2      I just don't remember it being shown on the screen.  It

3  might have been.

4          MR. BLOOM:  Even if it was or wasn't, that's not my

5  point.  The point is a moment ago the Court suggested that,

6  correctly, that as to a number of items, I said they were

7  grasping at straws.  Well, the fact is, I did not make

8  reference to that in my closing argument, after Mr. Bartlett

9  spoke of Justin Solondz.  I did say Justin Solondz isn't on

10  trial.  But the second reference, the one by Mr. Friedman, I

11  did not get to respond to that.

12          THE COURT:  I understand.

13          MR. BLOOM:  So I could not have, and I did not refer

14  to that, the Justin Solondz bank records.

15          THE COURT:  That's correct.

16          MR. BLOOM:  As to grasping at straws -- secondly as

17  to the stipulation, we didn't stipulate it could be offered in

18  evidence.  We stipulated if they wanted to offer it in

19  evidence, we would not require them to bring in a custodian

20  into court, through whom to offer it; is that correct?  That's

21  really what I think the stipulation is.

22          MR. FRIEDMAN:  Could I address those two points just

23  for the record?

24      Mr. Bloom's reference to the stipulation is correct.  The

25  stipulation lists basically a whole list of approximately 25

1  different business records.  It says the parties agree you

2  don't need to call a custodian for those; those are authentic

3  business records, but that each side reserves the right to

4  object as to relevancy.

5      So it was basically designed to make it easier to admit

6  these documents, either side could have objected on the

7  grounds of relevancy still.

8      In terms of when it was shown on the screen, I believe

9  that it was probably shown on the screen during Mr. Bartlett's

10  opening-closing argument, because he had a very detailed list

11  of the exhibits to be called up and Agent Halla was calling up

12  Exhibits for that.

13      I asked Agent Halla to call up only one document, which

14  was the list of the five names to which I referred to at the

15  beginning of my rebuttal argument.  I did not ask him to call

16  the others up and I know he wouldn't have been freelancing and

17  calling up.  So I believe it is highly --

18          THE COURT:  I remember Mr. Bartlett calling up things

19  on the screen.  I don't remember you calling up anything.  But

20  whether or not this particular thing was back on the screen,

21  that's where --

22          MR. FRIEDMAN:  I think the parties are now in

23  agreement, both Mr. Bartlett and I referred to it.

24          THE COURT:  The transcript I have read, the portion

25  of it mentions it.  Mr. Bartlett mentions this $200 check from

Mr. Solondz.  Both of you mention it.

MR. FRIEDMAN:  We both mention it but it was shown only once during Mr. Bartlett's original closing.

MR. BLOOM:  We agree with that factual representation.

THE COURT:  Then that's what I am going to do on the matter.  Did you get a copy of this?  I will have a copy made for the jury.

MR. FOX:  Your Honor.

THE COURT:  I can read it in front of the jury.

MR. FOX:  Sure, why don't we do that.  After we do that, I have a few other things to take up; why don't we get the jury in.

THE COURT:  All right.

MR. BLOOM:  Actually, I do too, but actually a couple things to affect maybe, if you decide something that might be told to the jury.

So could we take up those for just a moment -- other things?

THE COURT:  Well, if it needs to be done before I tell the jury about the curative instruction so they can go to work.  I told them not to go to work until I get this taken care of.

MR. BLOOM:  Let me tell you quickly.

THE COURT:  Go ahead.  I agree.  If it's got nothing

1  to do with them to go to work, they have been instructed not

2  to do anything until the Court told them it's time to

3  deliberate, so I want to take this issue up first.  Okay.

4      What he is asking, and I don't know if you folks have

5  dealt with this in terms of the exhibits -- there were some

6  exhibits read, like the fingerprint card, I believe, and the

7  Michael Martin matters, the stipulations, going back to the

8  jury in terms of exhibits as to what they say.  They say what

9  they say.  You've read them; I see no reason to keep those

10  out.

11          MR. FOX:  The stipulations.

12          THE COURT:  The stipulations that were read?

13          MR. FOX:  We talked about that yesterday, Your Honor.

14  Mr. Friedman and I thought that -- I think Mr. Friedman and

15  Mr. Bartlett have a difference of opinion.  I don't think the

16  stipulation should go back to the jury.  It's like testimony,

17  and it's in lieu of testimony, and my belief is that you read

18  it to the jury and there's no reason for them to be looking at

19  it in the jury room; it's in lieu of testimony.

20          MR. FRIEDMAN:  That's true.  The ones that have been

21  read to the jury have been read, we didn't offer them as

22  Exhibits or give them numbers, so I think they probably should

23  not go back to the jury.

24          THE COURT:  If you don't want them back there, they

25  have been read into the record.

1          MR. FOX:  Right.

2          THE COURT:  So I see no reason to give them more

3    paperwork than they need.  They either paid attention to what

4    they heard.  If there had been an issue with that testimony,

5    then they would have heard it.

6          I think that says enough about that.

7          Okay now, I want to call them back in and read them this

8    instruction, and then if there's anything else to take up, we

9    can do that.

10         So bring them in.

11         (Jury present.)

12         THE COURT:  All right.  Good morning.  I hope you had

13   a good night's sleep and all that.

14         I have one final instruction that I want to read to you

15   that you are to consider with the other instructions.  Of

16   course when I give you this instruction, then this is when you

17   start your deliberative process to make your decision.

18         During closing arguments, the prosecution referred to

19   Exhibit 745, bank records of Justin Solondz.  That exhibit was

20   not offered or admitted into evidence.  As a result, you

21   should disregard that portion of the prosecution's closing

22   arguments.

23         All right.  And you will get a copy of this instruction in

24   the jury room with you, also, along with the other exhibits

25   that should already be there.  If they are not all there, they

will be to you shortly.

Now you will retire to the jury room and begin your process.  All right.

(Jury departed at 9:40 a.m. to begin deliberations upon a verdict.)

THE COURT:  All right.  You may be seated.

I think the fact that there might have been other stipulations that were not read, of course they fall in the same categories as the ones that were read, so that's all said.

MR. FOX:  Two things, Your Honor:  One is a procedural matter regarding Exhibits.  It is my understanding from speaking to the lower bench, that exhibits that were offered and refused, are not made part of the record, and are returned to the parties that offered them.

THE COURT:  Correct.

MR. FOX:  Perhaps my state practice has been different, but I've never heard of such a rule.  And I guess I would ask that any exhibit that was offered and refused, remain part of the Court record, so if it becomes an issue on the appeal, the Appellate Court can review.

THE COURT:  It's part of the Court's record in terms of what's been offered and what's been rejected.  But as far as the custody, if you will, of it, you'll have to do that yourself.

1      MR. FOX:  I guess.

2      THE COURT:  I know you haven't heard of it, but now I

3  am breaking some new information to you.

4      MR. FOX:  Your staff did that to me yesterday.  I

5  guess I would ask that you change your practice, so that the

6  exhibits stay with the custody of the Court, so there's no

7  question.

8      THE COURT:  I appreciate the request, but the answer

9  is still the same.

10     You have to think about things that come here, that this

11  court would have to build another building to house these

12  things you are talking about and that's the reason for it.

13     MR. FOX:  I guess if it's good enough for King County

14  Superior Court it would be good enough for the United States

15  District Court.

16     THE COURT:  Some things are not good enough.  I

17  understand your argument but the answer is the same.

18     MR. FOX:  The other thing I would like to put on the

19  record is our objection to the verdict form, which we received

20  after we made exceptions to instructions.  My exception to the

21  verdict form is that I would ask that the words "Beyond a

22  reasonable doubt" be placed in the first line:  "We, the jury,

23  unanimously find the following."  I would ask:  "We, the jury,

24  unanimously find beyond a reasonable doubt the following."

25     And then I have other exceptions, that this verdict form

1    does not again require jury unanimity of all 12 jurors about

2    the object of the conspiracy, the scope of the conspiracy, and

3    the participants in the conspiracy and the coconspirators.

4        I have raised this in my briefing in the past, but we

5    believe the verdict form under the Sixth Amendment should

6    contain that language and that requirement.

7        THE COURT:  All right.  That's noted.

8        All right, anything else I need --

9        MR. BLOOM:  Yes, a couple things.  We briefly

10   discussed this yesterday, and I wanted to get it clear before

11   I gave my closing remarks.  In some courts, including federal

12   district courts, the jury if they are uncertain about

13   particular testimony, can ask for a read back of that

14   particular testimony.  I think in a case of this complexity,

15   it would be important for a jury to have that available to

16   them.  So whatever the practice has been, your own practice or

17   this district or this division of this district, I would ask

18   that that be amended so the jury be instructed that if they

19   wish to clarify, they are uncertain about actual testimony,

20   they can get the testimony read back to them.

21       THE COURT:  Well, what I am going to do in response

22   to that is wait to see if a question comes out that requires

23   some action of this court.  Otherwise I don't see anything for

24   this court to do.

25       MR. BLOOM:  I think hypothetically, the jury may be

1    discussing, he said that, he didn't say that, whatever, any

2    given witness, and if they don't know that they can get it

3    clarified by a natural read back.

4              THE COURT:  I understand what your request is, but I

5    don't intend to do that.  I don't do it that way.

6              MR. BLOOM:  I just was asking you to change your

7    practice.

8              THE COURT:  I understand that.

9              MR. BLOOM:  The next item:  At one point, the

10   prosecutor has indicated, it must have been Mr. Friedman

11   because of the sequence, maybe it was Mr. Bartlett, I am

12   sorry, I don't remember, that there was a suggestion that we

13   have the option of calling particular witnesses, and I think

14   the witnesses were named.  That of course is a shifting of the

15   burden of proof.  It's inappropriate, and I would ask that a

16   curative instruction be given with regard to those comments by

17   the prosecutors.

18      I have other things, should I go on?

19             THE COURT:  I am trying to understand this.  It's all

20   after the jury has got the case, so is it going to that issue?

21             MR. BLOOM:  I am sorry?

22             THE COURT:  I am trying to understand now why we are

23   having another session while we are waiting for the jury to

24   come back.

25             MR. BLOOM:  I didn't want to interrupt the closing

1  remarks of the prosecutor.

2          THE COURT:  So you want to make a record of things

3  you are objecting to?

4          MR. BLOOM:  If the Court deems it appropriate upon

5  our request or sua sponte, and here's my first opportunity to

6  make that.

7          THE COURT:  All right.

8          MR. BLOOM:  And that is I would ask the jury be

9  instructed, that to the extent that the prosecution

10  suggested -- let me -- two requests, one, I asked that a

11  mistrial be declared because there's an effort to shift the

12  burden of proof, and in the alternative, if the Court chooses

13  not to declare a mistrial, that the jury be instructed that

14  any suggestion to the effect that any suggestion by the

15  prosecution, that the defense should have called one or more

16  witnesses is inappropriate, and that it shifts the burden to

17  the defense, which is inappropriate in this particular case.

18      So that's my position.  Should I wait and have them

19  respond to that or should I move on?

20          THE COURT:  Go ahead.  Are you making a list of these

21  things?

22          MR. BARTLETT:  Yes.

23          THE COURT:  Okay.  Then let's go through all them and

24  then I will get a response to them.

25          MR. BLOOM:  There were, I believe, several

1   misstatements of testimony, particularly by Mr. Bartlett in

2   his closing remarks.

3       I would like the opportunity to address the jury with

4   regard to those misstatements.

5           THE COURT:   What are those?  What are those, other

6   than the ones we talked about?

7           MR. BLOOM:   I have a list but I don't have it in

8   front of me.  I will get that for you in a little while.

9       I will do that, I don't have it in front of me, I have it

10  in my papers.

11      Lastly, and I need some help here:  It is my recollection,

12  and I may not be correct, that in Mr. Bartlett's discussion of

13  the destructive device count, Count 6, that he indicated that

14  Ms. Waters could be convicted of that if all the jury found

15  was that she had rented a car and that the car was used to

16  transport such an item.

17      I took notes.  My notes are unclear, and I don't want to

18  categorically say that's what he said, but that's my

19  recollection.

20      If that's true, I think it's incorrect and should be

21  corrected.  That's all I have for now.

22          THE COURT:   Okay.  All right.

23          MR. BARTLETT:   Your Honor, there is clearly no

24  question about shifting the burden.  In fact, I remembered

25  distinctly when I brought up that witnesses could be called

1  from both sides, I actually prefaced it and ended it with it's
2  our burden and no shifting of the burden.  So I think that's
3  been addressed, and once more the Court has given its
4  instructions.
5      First of all whether or not I made any misstatements I
6  stand by -- first of all, I strongly stand by my closing.  If
7  I did, I think Mr. Bloom would have pointed that out in his
8  closing.  I thought that's what his response would be if I
9  made mistakes; that's where he would address -- I don't think
10  you get two closings think about it overnight and then come up
11  with misstatements.
12      If he thinks I made misrepresentations, I welcome him
13  going through the record, showing exactly what the witness
14  said, exactly what I said and explaining how that is a
15  misstatement.
16      I tried to be very careful in my closing, but I will wait
17  for Mr. Bloom to come up with exactly what I said, exactly
18  what is in the record and exactly how that was a
19  misrepresentation to the jury.
20      When he files that, I will respond.
21      Finally, with regard to the destructive device, his memory
22  is in error.  I specifically went to the jury and I
23  specifically said you just can't find that she helped the
24  arson, you have to find that she actually aided and abetted
25  the use of this destructive device.  I could not have been

1    clearer as to what our burden was and what they had to find.

2        I then did go through a variety of facts that I thought

3    would support her aiding and abetting the use of a destructive

4    device.

5        That was argument.

6        There was nothing -- I did not misstate the law, nor did I

7    misrepresent the facts.

8        But once again, Mr. Bloom can go through the record, find

9    exactly what I said, as opposed to paraphrasing what he

10   remembers, and we'll address it at that point in time.

11            THE COURT:  All right.  That may be a good way to do

12   it.

13       So, I will have you do that, and the only misstatement I

14   am aware of is the one we discussed earlier:  What the

15   curative instruction was about.  I don't know if you need me

16   to go through that one again.

17       But the shifting of the burden and that sort of stuff, I

18   will wait on you to do that.

19       But at this point in time, I am going to leave it where it

20   is.  I am not going to address the jury or opening up again.

21   They have got what they got, they will decide based on what

22   they have got and we'll go from there.

23       If it's I-5 south, that's how we go.

24       That's how I see it in trying to do this.  But I would

25   like to know this, because this makes a decision here as to

1   whether or not this will change what I have done.

2       So address that.  I don't know the extent of something --

3   you may raise something that -- I don't think I missed

4   anything; I don't have a habit of nodding off so I think I

5   heard everything, so I will have you point me to something,

6   just like --

7           MR. BLOOM:  Could we get a copy of the closing

8   remarks of Mr. Bartlett?

9           THE COURT:  I don't have the full thing; I only have

10  what dealt with the particular issue this morning, so it's not

11  complete.  What I have got is not complete, but you have a

12  right to order this out.

13      I don't know if you have to go through the CJA folks to do

14  all of that.  I don't know.  But you folks are coming at me in

15  a different way than normally.  If you are private counsel,

16  you pay for it and get whatever you want.

17      Here you have to go through and make a case, I guess, for

18  those folks to feel that they will pay for it, is what I am

19  saying.

20      So -- but, that's not my bailiwick.

21          MR. BLOOM:  Given the immediacy of the need here, we

22  ask the Court to -- could we shortcut the usual going through

23  the federal defender, getting the form to them, to the

24  Court -- I will do that.

25          THE COURT:  There's no way that I can do that.  But

1    my policy on this is that when something is submitted to me

2    for approval, and it's coming out of their coiffeurs, I expect

3    them to bless it, so to speak.

4        Okay.  So we'll be at recess.  I'd like to have you folks

5    stay within 15 minutes of the courthouse in case we get a

6    question or whatever may come up.

7            MR. BARTLETT:  There is one request of the United

8    States.  I would ask that the Court, on its own, take a look

9    at the questions and answers Mr. Bloom and -- that occurred

10   between Mr. Bloom and Dale Mann.

11       Mr. Bloom consistently represented he was not going to

12   violate the Court's order, yet as I read to the jury

13   yesterday, he in fact specifically did ask what Dale Mann's

14   opinion was, with regard to destructive devices and got out

15   the answer that it had to explode, which was directly in

16   violation of the Court's order and directly in violation of

17   what he orally represented to the Court prior -- I merely

18   bring that to the Court's attention since it was your order

19   that it was violated, in my opinion.

20           MR. BLOOM:  I am confident that I didn't.  When I

21   looked -- I don't have it in front of me, but the Court's

22   order, I think said I can't ask him his opinion -- I don't

23   remember the wording, but I know I did not ask that question.

24       I did talk to him, ask him questions as a scientist about

25   definitions.  And he gave answers.  But I absolutely did not

1    ask the question that the Court had prohibited me to ask.

2         MR. BARTLETT:  We don't have to debate that; you can

3    look at the court record.

4         THE COURT:  I hear what you are saying.

5         MR. BARTLETT:  I will.  I will supply it to the

6    Court.

7         THE COURT:  So he'll get a chance to respond in some

8    way or whatever.  All right.  We'll be in recess.  I would

9    like to have you folks within 15 minutes of the courthouse, so

10   if there's something I need you for, I can get you here in

11   that period of time.

12       All right, I guess you -- have we done everything with the

13   exhibits?

14        MR. FOX:  Yes, we did until about 8:00 last night.

15        THE COURT:  Barbara, did they get the curative

16   instruction?

17        LAW CLERK:  I have to make a clean copy.

18        THE COURT:  Let's do that and get it to them.

19        THE CLERK:  All rise, Court is in recess.

20        (Court in recess.)

21        (Back in open court at 10:35 a.m.)

22        THE COURT:  You may be seated.

23      We got our first note.  It didn't take too long.

24      The note is dated today's date, February 29, 08, time is

25   9:42.  It's signed by the presiding juror, Joe Martinez.

1    You have copies before you, but the first questions are
2  asking:  Can we get an itemized list of the exhibits?
3    No. 2:  Was Dale Mann accepted by court as an expert
4  witness?
5    And No. 3:  Can we get a copy of the transcripts?
6    I called you here of course to get your comments on these
7  things, and discuss it with you.  And then eventually tell you
8  what I am going to do about them.
9    Mr. Fox, you can go first with the matter.  It doesn't
10 matter who goes first, just some guidance here or some
11 thoughts.
12        MR. FOX:  In terms of itemized list of Exhibits, the
13 only list I am aware of are the exhibit lists that the
14 government and the defense prepared prior to the trial.  That
15 would be inappropriate to give to the jury because it
16 contains -- both of them contain Exhibits that weren't offered
17 or things that were refused.
18    If someone else wants to prepare a list of the exhibits
19 that were admitted, we don't have an objection to that, but I
20 think that would be -- I don't know that that can be done
21 quickly.
22        THE COURT:  I don't either.  To deal with it like you
23 are saying, you are saying your list and the Government's list
24 and of course we have Exhibits we are talking about that are
25 not admitted and all that.

1    MR. FOX:   And that would not be appropriate to give

2  to them.

3    MR. BARTLETT:   I can tell you we have our Exhibit

4  list electronically, and we will get Pat's list, go through

5  with regard to the Government's Exhibits, delete all the

6  non-admitted ones, and probably eliminate the numbering -- I

7  guess they need the numbering otherwise they won't be able to

8  figure it out.

9    We can go through all that and handle ours fairly quickly,

10  within the hour.

11    MR. FOX:   I would need -- I have my laptop, I would

12  need a printer, I don't have that in the Court.

13    MR. BARTLETT:   He can email it to me and we'll print

14  it out for him.

15    THE COURT:   I am trying to get your position.   Surely

16  it can be done, but are you saying that there should be a

17  different answer than we'll get that to you?   Or are you

18  saying it shouldn't be done period?   What are you saying?

19    MR. FOX:   I don't have a problem, if it's done.

20    Mechanically doing it is going to take time.   Also, I am

21  not sure -- I guess I am not sure -- I guess the defense

22  Exhibits and Government's Exhibits are separately marked -- if

23  we can produce one, I don't have a problem with it.   It's just

24  logistically it's going to take some time.

25    THE COURT:   I understand all that.   Are you for it or

1  against it?

2          MR. BLOOM:  We are for it.

3          MR. FOX:  We are for it.

4          THE COURT:  If it can be done, I have no problem with

5  it.  They just want a list of them, I guess.

6      I don't know what they are asking for, whether they are

7  asking in numbers or in a certain way.  I don't really know

8  what they are asking here other than can we itemize the list.

9          MR. FOX:  I guess also, the parties' description of

10  the exhibits could be problematic as well.

11          MR. BARTLETT:  Before we turn it over we'll give the

12  exhibit list to Mr. Fox.  If he has any problems with our

13  description we'll limit it.

14          THE COURT:  What's the answer?  Every effort will be

15  made to give you the itemized list?

16          MR. FOX:  Sure, we'll try to accommodate it.

17          MR. BLOOM:  Then it will take some time; we are

18  working on it.

19          THE COURT:  Then that becomes the problem, if the

20  time will take them through next week, next Friday, do you see

21  the problem?

22          MR. BLOOM:  They should have it in a couple hours.

23          THE COURT:  I guess, I don't know, I am trying to get

24  a consensus here if that's possible.  If I don't get a

25  consensus I have to tell you what I am going to do.

1          MR. FOX:  What are you going to do.  I am curious

2     what the Court's feeling is.

3          THE COURT:  My true feeling is they have got all

4     their things in there, they have their eyes, and they can see,

5     so why do we have to tell them what it is.

6          MR. FOX:  We are fine with that.

7          MR. BARTLETT:  I just think Your Honor, to the

8     extent -- it's tough being a juror.  It's hard to look at the

9     various Exhibits, saying this picture goes with this fire.  I

10    think it would be helpful to them.

11        We are here to try to help them out.  It's difficult --

12    they sat through three weeks.  I don't think they are asking

13    for much with regard to that question.

14         THE COURT:  If you give an itemized list, wouldn't

15    that necessarily entail a description?

16         MR. BARTLETT:  A description as to Susanville photo.

17    It would be a very generic description.

18         MR. FOX:  We don't have strong feelings.  Whatever

19    the Court wants to do, we'll do whatever the Court thinks.

20         THE COURT:  I am concerned about it only if this can

21    be done in some sort of timely fashion, if you can agree they

22    should be itemized, saying this photo -- I don't know, but now

23    I am going to have to hear another argument from you folks

24    whether you would label it one way, you would label it another

25    way.  Do you see the problem?  When I tell these folks

something is coming, they are sitting there waiting for

something to come.

MR. FOX: We will do whatever the Court wants us to

do.

THE COURT: Let's do it this way: I think that's a

matter that maybe calls for an answer.

MR. BARTLETT: I will offer -- we can provide

whatever logistics help Mr. Fox's needs.

MR. FOX: And we'll do whatever the Court wants.

THE COURT: What I am saying is this: This ought to

be an answer that needs to be deferred, I need to see what you

folks present to me, without argument, and then I have no

problem with them having it. If it's going to tell them it's

coming, and they keep saying when are we going to get it, and

you folks argue about it and we are back to square one because

you can't agree on everything, and then we are back to where I

said, you have everything you are going to get, look at it for

yourself and line it up the way you want to.

MR. FOX: Do you want to perhaps tell the jurors we

are considering that?

THE COURT: The answer will be forthcoming.

MR. BLOOM: I think that's the best.

THE COURT: You may agree right away that we can do

that and we can get that done right away, but I don't know, I

haven't found a whole lot here that I have had total agreement

1    on.   That's my problem.

2        So my recommendation is that that be deferred.   I will

3    frame the answer, and you will see that before anything goes

4    to the jury.

5                MR. BLOOM:   Do you plan to give them their own note?

6                THE COURT:   I will answer this, I will share it with

7    you, then my response will be in writing, I will sign it and

8    tell them this is going back to them.

9                MR. BLOOM:   Good.   I don't see any need to bring them

10   out.

11               THE COURT:   I am not going to bring them out.

12       Second question:   Was Dale Mann accepted by the Court as

13   an expert witness?   I remember we talked about what he should

14   say and all that.   I don't remember him being offered as any

15   kind of expert or anything else.   Then we went into his

16   testimony when the jury came back out.

17               MR. BARTLETT:   My memory was he wasn't even offered.

18   I was waiting for that.   I don't believe it happened but I

19   will let Mr. Fox respond to that.

20               MR. FOX:   Factually, I don't believe Mr. Bloom

21   offered him as an expert.   I would ask that the Court answer

22   this question as "you are to rely upon your collective

23   memories as to the testimony," rather than telling the jurors

24   what the testimony was.

25               THE COURT:   Well, he was allowed to testify.   The

issue here is what was he called -- he was called as an
expert, but he wasn't offered as an expert.

MR. FOX:  Although he was allowed to testify.

THE COURT:  Clearly he was allowed to testify,
there's no question about that.

MR. FOX:  So I think the formal offering him as an
expert apparently didn't take place, but he did testify as an
expert, but I think the Court should just say "rely upon your
collective memories."

MR. BARTLETT:  I reluctantly agree with that, Your
Honor.

MR. FOX:  I guess we agree on something.

THE COURT:  Give me your side of it.

MR. BARTLETT:  I agree, despite the fact that I think
it is absolutely clear and it kills me not to help the jury
out with a yes or no answer that could help them out.  I think
they should just rely on their collective memory.

THE COURT:  So we are saying rely on their collective
memory as to Mr. Mann.

MR. FOX:  Right.

THE COURT:  And we have agreed No. 1 should be
deferred.

Now, No. 3, let me tell you my normal position:  I do not
give transcripts to the jury.  This one is more problematic
than most of them as we have three weeks of testimony about

1   something.  They are asking for the transcripts.  They haven't

2   pointed to any particular problem or anything they are

3   focussing on or anything.  There's just nothing there to tell

4   me what they want to do, and I don't like to do things where

5   you place undue emphasis on something.  That's normally my

6   position, so as a rule, it would appear to be within my

7   discretion to deal with these transcripts.  I don't send them

8   to them, that's why I keep the indictment out and frame the

9   issues in a way that the Court is not placing a focus on

10  anything.  And I don't know what I can place a focus on here.

11       Now, let me hear from you too.

12       MR. BARTLETT:  First of all you told them before the

13  trial that you are not going to get transcripts.  There's no

14  question you told them that.

15       Second of all, the Ninth Circuit clearly discourages the

16  providing of transcripts.  In my 27 years in this district, it

17  has never occurred in any criminal trial at any point in time,

18  and I certainly don't think this is any different than -- this

19  is a three week trial.  Kind of long -- the Hell's Angels,

20  case went eight weeks.  It just shouldn't be done.

21       THE COURT:  I normally don't do it.  That's my rule,

22  unless something could probably move me off that position.

23  And I will hear what you have to say to do that, but the main

24  thing here, they are just saying can I have transcripts.

25       MR. FOX:  I am sure the jury is wondering since

transcripts were referred to during the course of arguments, whether they get to see them as well.  I think at this point it's premature.  I agree with the Court they are wondering what the procedures are.  I think we can say something like not at this time or something.

MR. BARTLETT:  No, not at this time.  The Court should refer back.

THE COURT:  Let him make his case for it.

MR. FOX:  If there's something specifically that comes up, write us another question and then we'll answer that.

THE COURT:  All right, but my position on this is a plain two letter word:  No.

MR. BARTLETT:  I think the answers to both No. Two and No. 3 should be the jurors should rely on their collective memories to whatever, to establish what the facts are in this case, something along those lines.

THE COURT:  I agree with that, because something could come up to make me change my mind.  I think that's a better way to say it.

MR. BLOOM:  Before we move on, about an hour ago, I suggested that maybe the Court would want to tell the jury that if they wanted a read back, they could get that.  Perhaps this is a good time to tell them that no, whatever you want to tell them about the transcripts, I don't disagree with that.

1   I agree, we seem to be all in agreement that the actual

2   transcripts -- but I would suggest some way saying to them, if

3   there's a particular question, we'll address that.  And

4   actually I do renew my request, that the Court say in some

5   way, that if you need any part of the testimony read back,

6   that can happen.

7           THE COURT:  No, I don't want to be -- I don't want to

8   respond to anything.  I don't want to give them something to

9   think about and something to ruminate on and do that.  I just

10  want to answer these questions:  I am always careful about

11  bringing folks back to reread or do something about testimony,

12  when they need to call on their recollection.

13      The reason I don't like that, it seems to be the Court is

14  placing special emphasis on something.  So I try to stay away

15  from those things as much as possible.

16      But I want to hear your discussion and your position on

17  it.

18          MR. BARTLETT:  And the Court has just articulated

19  what exactly the Ninth Circuit says, they don't want specific

20  read backs of things because the Ninth Circuit has indicated

21  that places too much emphasis on various things, they should

22  rely on their collective memory, they should go back, they

23  shouldn't be encouraged to ask further questions about this,

24  they should rely on their collective memory as to what

25  occurred during the trial.

1          THE COURT:  All right.  I think I understand your
2    positions.
3          MR. BLOOM:  Our position is otherwise.  I don't want
4    to further argue it.
5          THE COURT:  What I intend to answer to the jury is
6    this.  The response to that question -- the itemized will be
7    deferred and for them to keep deliberating and that they will
8    get an answer at some point in time.
9       As to No. 2 and 3, I am going to tell them that they will
10   have to, as to those matters there, that they will have to
11   rely on their collective memories about it.
12      And that will be the answer.
13      Okay, but I want you to hang around, because when I put it
14   together in the language that I am going to say these things,
15   I want you to see it before we file it and send it back to
16   them.
17          MR. BLOOM:  Thank you.
18          THE CLERK:  All rise, Court is in recess.
19      (Brief recess. )
20      (Jury not present.)
21      (Back in open court at 2:35 p.m.)
22          THE COURT:  You may be seated.
23      We are back in the matter of Briana Waters.  This is now
24   involving the itemized list.  You can tell by my questions I
25   was sending back to you, what I was concerned about.  This

1  list ties up with the question that they asked, and this, of

2  course, that I have signed and sent to you would be the final

3  answer telling them that the attached itemized exhibit list is

4  to go with this instruction and answer jury question No. 1

5  that they sent out at the particular time and date.

6      Everybody satisfied with that?

7        MR. FOX:  Yes.

8        MR. FRIEDMAN:  Yes.

9        THE COURT:  Any further comments on it?

10    I have signed this final question that you see, and this

11  is the exhibit list, where everybody is in agreement, and

12  we've entitled that -- well, I guess maybe we just refer to

13  the question, but I have given the instruction a number of 34.

14  What that says, is that the itemized list of Exhibits is not

15  evidence in this case.  It is intended solely to assist you

16  and to evaluate the evidence that has been admitted.  Any

17  description of items on this list that differ from your

18  testimony in court, should be disregarded.

19      That's what the instruction says.  Any issue with that?

20        MR. BLOOM:  Excuse me, one second.

21  (Discussion held off the record.)

22        MR. FOX:  My only question, Your Honor, is to

23  instruct them, do we need to have them out?

24        THE COURT:  I wouldn't think so.  They asked for an

25  itemized list, and this is -- I don't see anything different

1  than the curative -- I don't think it's necessary to do that.

2  If you want them here to say this, this is what you agreed

3  upon.   I tell them how to consider that agreement.

4          MR. FOX:   Sure, that's fine.

5          THE COURT:   Anybody requesting them to be out here?

6          MR. BLOOM:   No.

7          MR. FOX:   I wasn't sure, that's why I was asking.

8          THE COURT:   I just want you to agree with what's

9  being said here.

10         MR. FOX:   Yes, I drafted that.

11         THE COURT:   Then I guess you agree with it.

12      So, I will have this delivered to them, and this is

13  really -- really what this is is the response to the question.

14         MR. FOX:   Okay.

15         THE COURT:   Okay.  All right.   Then I guess we'll

16  wait for the next 15 minutes.

17         MR. FRIEDMAN:   Thank you, Your Honor.

18         MR. FOX:   Thank you.

19         THE CLERK:   All rise, Court is in recess.

20      (Proceedings in recess pending jury deliberations.)

21      (Back in open court at 3:35 p.m.)

22         THE COURT:   You may be seated.

23      Another note to share with you folks.   I think you

24  received it.   This note is dated today's date.

25      Came out at 3:10, 1510 as it's written here.   They are

asking "What is the definition of interstate commerce as it

pertains to Count 5, line 12 and 13?"  So they are looking at,

it appears, the charging instruction on that count.

My thinking on these things would be this, not to try to

give them anything.  They have heard testimony, they heard, I

think it was Mr. Quarfoth, the provost marshal, University of

Washington, who said -- talked about students from other

states and that kind of testimony and interstate kind of tells

you if you deal with words and commerce, of course, it ought

to be somewhat self explanatory.  So I don't know what to do

other than they want you to find it and tell them exactly what

it means.  Commerce means you are dealing with something, and

they want to know what the definition is.

Unless you folks have something that you could agree upon,

and I agree upon it, too, they have to let their collective

memories decide this issue.

I don't see anywhere else to take this.  Those are my

comments.

Mr. Friedman and Mr. Fox, whoever wants to start this, go

ahead.

MR. FOX:  Thank you, Your Honor.  We had proposed an

instruction before, Instruction No. 15.

THE COURT:  I have it, right here.

MR. FOX:  I believe, even if the Court doesn't like

the second part of that instruction, which I proposed and I

1  still think the Court should give it.  But even if the Court
2  doesn't accept that, I think the first sentence does properly
3  set out what interstate commerce means.  I believe in my
4  pleadings last year, I referred to the Lemonts(phon) case from
5  the Ninth Circuit that dealt with a church, the Suvud church,
6  that was an arson.  The Ninth Circuit said the church
7  ordinarily would not be involved in interstate commerce
8  because its primary function was to administer to people even
9  though people had missions that went off to different places
10  internationally and they sent literature, but the primary
11  focus was a church.  So I think at the very least the first
12  sentence of our proposed instruction should be given to the
13  jury.  I would ask the whole thing be given but I am not sure
14  the Court is going to do that.
15          THE COURT:  We discussed that before.  Let me hear
16  from the government.
17          MR. FRIEDMAN:  We had looked for a helpful definition
18  when we were proposing our jury instructions and we did not
19  find a definition that would be more helpful, anything more
20  than the plain meanings of the word, so I think we would be
21  inclined to do what the Court suggest, which is to tell them
22  they have the instructions in the case.  Those are the
23  instructions.
24          THE COURT:  All right.  Obviously you haven't agreed
25  here, but this instruction proposed by the defense, I had

problems with it when I saw it, because it is not a neutral type thing.  It tells them how to think.   And the cases involving interstate commerce are all over the place in terms of what they need to find.

They have heard testimony on this issue, by the provost, I don't know what his title was, I guess device provost from the University of Washington.  He talked about the financial end. He talked about students coming from various places, this that and the other thing.

If they can't take that information and settle this issue, then I suppose they will make a decision in keeping with not being able to do that.

But I am not finding this term out of the ordinary in a way that you have to define everything that these folks want to think of.  The instructions are intended to give them some guidance as to how to view things and do things.

They have the elements.

If they can't satisfy that element that they have described -- that's line 12 and 13, if they can't decide what that is, I guess they have to determine, well, whether the element has been met or not.

They have what they have to find so my response, that I would give, based on you not agreeing, would be to call on your collective memories as to what that meant, in terms of, you know, the evidence in the case.

1          MR. FOX:  I guess, Your Honor, I don't think that we

2    should tell them to call on their collective memories as to

3    the evidence in the case when they are asking for a definition

4    of a term.

5        I think rather than that, I would just say, first off, I

6    think we should give the instruction I proposed.

7          THE COURT:  I know.

8          MR. FOX:  Secondly, I would give the first sentence,

9    not the second sentence.  As a fall back, I would say reread

10   your instructions, like that's it.

11       Rather than -- because they are asking for a definition of

12   a term.

13         THE COURT:  How about "you have gotten everything you

14   are going to get on this issue."

15         MR. FOX:  So reread their instructions.

16         THE COURT:  I don't know if I want them to reread

17   anything but you've gotten all you are going to get on this

18   issue, all right.

19         MR. FRIEDMAN:  I think that's fine.  Ask the Court to

20   basically -- they have received both the instructions and the

21   evidence.

22         THE COURT:  I will try to frame something here.  If

23   you want to help me frame the answer I will listen to you on

24   that but I don't intend to focus on any particular thing, I

25   just want to tell them "you received everything you are going

1  to receive on this issue.  That should tell them don't ask me
2  again about it.  That's what that says there.
3        MR. FOX:  I guess you could do that, sure.
4        THE COURT:  Have you guys sit there right now,
5  because we will probably have another question before 4:00, so
6  no sense in you going home before I let them go.  I will
7  probably let them go home around 4:30 and come back Monday and
8  do something.  So you might as well not -- you got 45 minutes
9  to that time.
10       MR. FOX:  Okay.
11       THE COURT:  Any other comment.  I will frame this
12  answer.  And then I will send it back to you so you can get
13  your comments or bless it or do something, and what is decided
14  here, will be what I will send back to them in response to
15  this question.
16     Okay.  So take a brief recess, and I will get that to you
17  in a minute.
18     (Court in recess while court composes answer to jury
19  note.)
20     (Back in open court at 4:35 p.m.)
21       THE COURT:  All right, you may be seated.
22     I think what we have talked about -- obviously they
23  haven't made any decision, so send them home for the weekend
24  and with all the precautions that we normally do and have them
25  come back, begin work at 9:00 on Monday.

1    So, I will do that.  Then I will say a few words about you

2  guys as to how to do it.

3    Okay.  Bring them in.

4    (Jury present.)

5         THE COURT:  All right.  You may be seated.

6    Mr. Martinez, I can tell -- you may be seated -- by the

7  signing of the notes, that you have been elected as the

8  presiding juror.

9         PRESIDING JUROR:  Yes.

10         THE COURT:  I think it is fair to say you have not

11  reached a decision at this time, so it looks like the time to

12  quit work for the day and start again.  Is that fair to say?

13         PRESIDING JUROR:  Yes.

14         THE COURT:  So what we are going to do is recess this

15  matter today, for you to go about your way and have you report

16  back into the jury room at 9:00 on Monday, with the

17  understanding that as a rule, as I have always been telling

18  you, don't discuss the case, research anything, talk to

19  anybody about it, all those things I keep telling you.

20    When you are back in the jury room you are not to discuss

21  anything even among yourselves until all 12 of you are

22  present; you are present every time and any time any word is

23  said about this case.

24    Leave all things pertaining to the case, your notes, your

25  books, everything pertaining to the case in the jury room.

1    Have a good weekend and I will see you back here, ready to

2 go at 9:00 on Monday.

3    Okay.  All right.  You are excused.

4    (Jury excused for day.)

5    THE COURT:  All right.  You may be seated.

6    The jury will come back at 9:00, I would say that at least

7 by 10:00, you ought to make some contact with the Court by

8 calling Pat, letting her know your whereabouts, so at least

9 you can be here within 15 minutes of whatever might come up.

10    So, I will ask you to do that.  Aside from that, that's

11 when I will see you.  Anything?

12    MR. BLOOM:  Just curious, the other two jurors, the

13 two people --

14    THE COURT:  Where are they?

15    MR. BLOOM:  I was thinking, where are they, what are

16 they doing?

17    THE COURT:  They are released with the same

18 admonition I said here, not to talk to anybody, do anything

19 about this case until this jury has made a decision.

20    MR. BLOOM:  So they haven't been in the courthouse?

21    THE COURT:  I don't believe so.  They were excused

22 from here to be on-call, with those instructions.

23    MR. BLOOM:  I just didn't know.

24    THE COURT:  Because I don't know, let's say bad luck,

25 something happens that may call into question whether we have

1    to redo something.  They are out of the building, they have

2    gone about their business except to put this case aside and

3    not discuss it.  That was their instructions when they left.

4        Anything else?

5            MR. FRIEDMAN:  No.

6            THE COURT:  That's the way we'll do it.  I will talk

7    to you somewhere around 10:00.  So you will be close within 15

8    minutes.  The 15 minutes seems like a good time, the way

9    things have been going so far.  I am expecting you will be in

10   Tacoma by 10:00.  So you'll be close.

11       Okay.  We are at recess.

12           THE CLERK:  All rise, Court is adjourned.

13           (The Court recessed to Monday, March 3, 2008, at the

14   hour of 9:00 a.m.)

15                   *   *   *   *   *

16                 C E R T I F I C A T E

17

18       I certify that the foregoing is a correct transcript from

19   the record of proceedings in the above-entitled matter.

20

21   /S/  Teri Hendrix_____        May 5, 2008

22   Teri Hendrix, Court Reporter              Date

23

24

25