1  UNITED STATES DISTRICT COURT
   WESTERN DISTRICT OF WASHINGTON
2  AT TACOMA

3

4  UNITED STATES OF AMERICA,      )  Docket No. CR05-5828FDB
                                  )
5          Plaintiff,             )  Tacoma, Washington
                                  )  March 3, 2008
6  vs.                            )
                                  )
7  BRIANA WATERS,                 )  VOLUME 15
                                  )
8          Defendant.             )
   _____)

9

10                 TRANSCRIPT OF PROCEEDINGS
11     BEFORE THE HONORABLE FRANKLIN D. BURGESS
     SENIOR UNITED STATES DISTRICT COURT JUDGE, and a Jury.
12

   APPEARANCES:
13

14  For the Plaintiff:      MARK N. BARTLETT
                            ANDREW C. FRIEDMAN
15                          Assistant United States Attorney
                            700 Stewart Street, Suite 5220
16                          Seattle, Washington 98101-1271

17  For the defendant:      ROBERT BLOOM
                            Attorney at Law
18                          3355 Richmond Boulevard
                            Oakland, California 94611

19                          NEIL M. FOX
                            Cohen & Iaria
20                          1008 Western Ave., Suite 302
                            Seattle, Washington 98104

21

22  Court Reporter:         Teri Hendrix
                            Union Station Courthouse, Rm 3130
23                          1717 Pacific Avenue
                            Tacoma, Washington  98402
24                          (253) 882-3831

25  Proceedings recorded by mechanical stenography, transcript
    produced by Reporter on computer.

MONDAY, MARCH 3, 2008 - 9:30 A.M.

* * *

(Jury not present.)

THE CLERK:  This is in the matter of United States versus Briana Waters CR05-5828FDB.

Counsel, please make an appearance for the record.

MR. FRIEDMAN:  Good morning, Your Honor, Andrew Friedman and Mark Bartlett for the United States.

MR. BLOOM:  Robert Bloom and Neil Fox for Briana Waters who's present.

THE COURT:  All right.  I guess the matter of some concern was that the fire up there in Woodinville, where the ELF seems to be taking credit for, was on the news this morning.

You were at the door, I guess, before the courthouse opened, so let me hear now your presentation on this, and what actions if any this calls for.

MR. BLOOM:  Sure, I will try to be brief, because actually I would like to get something done with the jury as soon as possible.

It was the lead story, somebody called me at 6:00 a.m. and I was watching television, it was the lead story on all the local channels, they had helicopter pictures of the very serious fire, several houses in a wealthy development.  They expressly mentioned ELF, they showed a banner, supposedly

1    prepared by ELF, taking credit.

2        Briana Waters was mentioned by name several times.  The

3    case was mentioned several times.  Devices were mentioned

4    several times.  Needless to say, this is not in any way

5    helpful to Briana Waters.  Indeed, we think it could be

6    disastrous insofar as it may affect the deliberations of this

7    jury.

8        I'd like to later go into the possibilities of who might

9    actually have been responsible for this, but I don't want to

10   do that now; I don't want to take the time to do that now.

11       I would simply -- our first request is that the Court

12   speak to each of the jurors in court, individually, and ask if

13   they are aware -- I would do it and request it be done in as

14   neutral language as possible -- if there's a news story that

15   might -- not related to this case, but might impact you; are

16   you aware of it.  And then depending on what the juror says --

17       THE COURT:  Read that to me again what you are

18   saying.

19       MR. BLOOM:  If there is a news -- there's a news

20   story that broke this morning.

21       THE COURT:  I understand you are saying something

22   should be said to the jury in a neutral sort of way; say that

23   again.

24       MR. BLOOM:  And the language to the effect that

25   there's a news story this morning.

1      THE COURT:   I understand you are going all over that

2   again.   I understand the news story.

3      Tell me the language you are saying.

4      MR. BLOOM:   That's what I was doing.   Do it your way.

5   I am proposing language.   The language is:   "There's a news

6   story this morning that might impact your deliberations, are

7   you aware of anything?   I wasn't rearguing, I was actually

8   giving you the language, or proposed language, I should say.

9      THE COURT:   You are saying there's a new story this

10  morning that might affect your deliberations.   That's it.

11     MR. BLOOM:   Are you aware of anything?

12     THE COURT:   All right.

13     MR. BLOOM:   Something like that.

14     THE COURT:   Okay.   All right.

15     MR. BARTLETT:   Two things, Your Honor.   First of all,

16  I think we need to look into this.   Mr. Bloom is suggesting

17  that each juror be brought out individually.   That may be what

18  the Ninth Circuit suggests and recommends in this situation, I

19  don't know.   But I think we need to look into that.

20     My initial thought on this was that the juror should be

21  spoken to as a group and be reminded of their instruction,

22  specifically Instruction No. 6, which indicates at subsection

23  4, anything you have seen or heard when the Court is not in

24  session is not evidence, you are to decide the case solely

25  open the evidence received at trial.

1    That was what the government was going to recommend, but I

2  would like an opportunity to look into what does the Ninth

3  Circuit recommend.

4    I don't know, with regard to Mr. Bloom's suggestion, what

5  is the next step, if you bring a juror out individually, and

6  ask them have you heard about this story and they indicate

7  yes, well what do we do then.

8    Clearly if they have heard about it, to a certain point,

9  it's a so what.

10    The question really is has this story impacted their

11  ability to be impartial in the case.  Before we get into

12  individual jurors questioning, I think we need to look at what

13  the Ninth Circuit recommends.  This is not the first time this

14  type of situation has been brought up.

15    And I might point out to the Court, something the Court

16  might not be aware of:  This is not the first time this exact

17  situation has happened with regard to ELF.

18    There was a trial -- the last big trial in the northwest

19  regarding the ELF was the Jeff Lewrs case down in Oregon in

20  March 2001.  Mr. Lewrs had been accused and been convicted of

21  burning a number of SUV's at the Romania car dealership.

22  During the trial there was a second arson at the Romania car

23  dealership virtually identical to what's going on here, so

24  this is not a total surprise to the United States.

25        THE COURT:  What I am hearing here, guess what I am

hearing from the two of you something should be said to the
jury and of course the fashion in which it would be said.  Is
that a consensus.

MR. BLOOM:  I agree the juror says I haven't heard
anything, we should thank the juror and bring in the next one.

THE COURT:  I understand your position you think I
should do it individually.

MR. BLOOM:  Yes.

THE COURT:  And you are saying no, it shouldn't be.

What I am trying to get at, and I will probably do
something and I will tell you what I am going to do when I
think about it a little bit, I want to get your positions
first.  And then I will tell you what I am going to do.  And
that's what you are going to have to live with, both of you,
whatever that is.

There's one step beyond that, I suppose, and that's this:
Let's say whatever fashion it is asked, and the answer becomes
no, I can't set that aside.

MR. BARTLETT:  It's like I said Your Honor, at this
point, I do not know what the Ninth Circuit recommends.

As I stand here off the top of my head, I would tell the
Court I strongly would object to individual questioning.  I
would recommend the Court give a general admonition, that of
course they are just to consider the case with regard to the
evidence they heard inside in courtroom and they are to ignore

1   any outside news articles, but I don't know the law.  I

2   haven't had a chance to look into it and in response to my

3   second question, what if the question is asked in any fashion,

4   and then the next question is can you set this aside and

5   decide this case solely on what you've heard here.

6       Say it comes in that fashion, and somebody says no, I

7   can't.  I want a respond from both of you on that.

8           MR. BLOOM:  I think as to that question once we hear

9   that, that juror should go back in the jury room and we should

10  discuss it or each of our positions.  As to individual, the

11  reason I suggest individual questioning, let's say some jurors

12  have not heard of it, and now they hear of it with a general.

13          THE COURT:  If they haven't heard, I won't worry

14  about the ones who haven't heard.  Those are the easy ones.

15  It's the mind set of the ones that might have heard something.

16          MR. BLOOM:  Sure.

17          MR. BARTLETT:  I am looking for an opportunity to go

18  down and look at the law, Your Honor.  I do not know what the

19  Ninth Circuit recommends.

20          THE COURT:  Well, I think I have a pretty good idea

21  as to how to handle this.  I just want to get you on the

22  record as far as I can.  If they say something in that fashion

23  to my last question, then I will send them back in.

24          MR. BLOOM:  I am just concerned about time, I don't

25  want them deliberating further.

1        THE COURT:  They are not deliberating.  They are not

2 deliberating.

3        MR. BLOOM:  Okay, that resolves my concern.

4        THE COURT:  When this was coming on the docket, they

5 were shut down.

6    I want to gather a thought here and then I will tell you

7 how I am going to handle this.

8        MR. BLOOM:  Thank you.

9        THE COURT:  Of course, I will come back out here, so

10 if any of you have any input as I come back out and you can do

11 that quickly I will listen to whatever you might have to add.

12 Okay we are at recess.

13        (Brief recess.)

14        THE COURT:  All right, you may be seated.

15    I have thought about this matter in terms of addressing

16 it, and my conclusion is this -- and then I will have you

17 speak for the record if you'd like to -- is that the jury

18 should be called in and they should be spoken to as a group,

19 as I process it, when I voir dired the jury, I will be putting

20 this to them as a whole, not individually, and I will ask them

21 a question along this line:  That there's been a news story

22 this morning that could possibly influence your deliberations.

23 Then I will tell them what I had instructed them to do and

24 what they have been -- and their responsibilities, and the

25 admonitions I have been giving to them as they go about their

1    business from day to day.

2        Then the final question I will ask them, any of them won't

3    follow the instructions as I have given to you about this

4    case, any of them won't decide the case based on how I have

5    instructed them.

6        If they won't do that, I suppose somebody will tell me

7    they won't do that.  Then that's probably the best approach

8    that I see in terms of neutrally giving it.  If we see no

9    hands, then they will go back and do their job.

10        That's my position.  You can make any record beyond that

11   you care to.  I am not seeing anything else I want to add to

12   that.

13            MR. BLOOM:  I respectfully disagree.  I think it is

14   important, a story of this magnitude, where I personally heard

15   Ms. Waters name mentioned on at least two of the local

16   channels, said the jury is out deliberating.  And more.  That

17   it really is important to get from each juror what he or she

18   has heard, so that we can, the Court can really hone in on

19   what obviously is a big story.  It's the lead story, fires,

20   pictures, everything.  It's just -- it's not just a casual

21   mention, and I really would, again, repeat that I think we

22   have to really inquire of the jurors what if anything they

23   have seen or heard.

24            THE COURT:  All right.  I understand what you are

25   saying.  Mr. Bartlett.

1      MR. BARTLETT:  I agree with the Court's position; it
2  is not important whether they have heard or not heard.  It's
3  important whether they have heard anything that would impact
4  their ability to be impartial and the Court is going to
5  inquire of that.
6      THE COURT:  That's what I think is the essential
7  thing.  You've made your record, just like there's been
8  reports in the paper about this case, name's been in the paper
9  about all of those things.  It's not that these names haven't
10  appeared anywhere, it's in terms of whether it affect them
11  making a decision.
12      That's my concern.  That's what I am trying to avoid.
13      So with that, we'll bring the jury in, and then I will
14  deal with this in the fashion I have said.  You've had your
15  record and we'll go from there.
16      All right.  Bring them in.
17      (Jury present.)
18      THE COURT:  All right.  You may be seated.
19      Good morning to you.  There's been a news story this
20  morning on the news that could possibly influence or affect
21  your deliberations.  The Court has instructed you on your
22  duties and responsibilities as jurors, and admonishing you as
23  you go home from day to day and all of that.
24      Any of you now heard anything about this that you cannot
25  set aside, or would it influence your deliberations here;

anybody heard anything that would be different than the
instructions I have given you as to what evidence you are to
take to decide this case?  Anybody that can't do that?

(No hands go up.)

THE COURT:  All right.  Then your instructions are
you are to follow the law as I have given it to you and carry
that out and perform that function in that fashion.

So now you will go back to the jury room and begin your
deliberations.

(Jury departed at 10:20 a.m. to resume deliberations.)

THE COURT:  All right.  You may be seated.

We will be at recess.  I don't know if there's anything
else to be said about that.  The other question that I
mentioned, didn't come up, so we'll see what happens.

You made your record.

MR. BLOOM:  I want to say the following, given the
court's approach, we are very much in the dark, of course, as
to -- there were a couple nods from the jurors, suggesting
that they were -- at least those jurors were aware of the
story.  We are in the dark here now and we have to contemplate
whether or not we wanted to make a motion for mistrial.  We
really have no information, because there has been no
exploration with each or any of the jurors.

So, we have that quandary.  I want to discuss it with
cocounsel and Ms. Waters, and that's our position.

1    THE COURT:  I think you made your record.  So you can

2  use it anyway, but that's the court's answer to that.

3    MR. BARTLETT:  For the record, Mr. Bloom is free to

4  put on the record whatever he wants.  The only nodding I saw

5  from this juror was at the end when you said can you be fair

6  and impartial and put aside anything else and follow the law;

7  those are the only times I saw jurors nod.

8    THE COURT:  You both saw the accident, whatever.

9  Okay.  We will be at recess.  I will have you remain within 15

10  minutes of the courthouse so I can get you up here in 15

11  minutes if need be.  We are at recess.

12    THE CLERK:  All rise, Court is in recess.

13    (Court recessed at 10:20 a.m.)

14

15    (Back in court at 10:40 a.m..)

16    THE COURT:  All right.  You may be seated.

17  Mr. Bloom.

18    MR. BLOOM:  Yes, we move to declare a mistrial for

19  the following reasons:  Given the approach that the Court

20  chose to take with regard to addressing the jury, we are left

21  with no idea what each of the jurors has heard, and seen.  We

22  know that in connection -- I watched for at least two hours

23  this morning, that it would be the television coverage on all

24  the local television channels, and I know that Briana Waters

25  name was absolutely mentioned.  The fact that the trial is

1   happening.  One of the channels said that she testified last

2   week.  Another said that the jury is deliberating.  And there

3   was more, literally every story I read after -- I am sorry,

4   saw after the first few mentioned this case.

5       This event, this arson at this development is in no way --

6   can do anything -- the coverage can do anything but harm

7   Briana Waters.

8       This is -- for one thing, it appears to be the first arson

9   in seven years for which the Earth Liberation Front has taken

10  credit.

11      It's fearful, would make the jurors fearful -- this is

12  different from just a story about the case; this is different

13  quality, quantitatively and qualitatively; this is a major

14  story; this is part of the fabric of the community, and it's a

15  story so large and so pervasive that there's no way that the

16  jurors could have avoided having heard about it and been

17  impacted by.  It's compelling.

18      The footage of the flames was very frightening.  They

19  talked about there were devices found, I think there was at

20  least one device that it was said did not work, and I think

21  the phrase that was used by the newspaper person was it's

22  solid gold, or a gold mine, I think was the phrase for

23  investigators.  They talked about FBI investigators, ATF

24  investigators, fire fighters; they interviewed the fire chief

25  in the area, said it was definitely arson.

He particularly referred to the Earth Liberation Front, actually first called it ALF, and then the person interviewing him said Earth Liberation Front. At that time they showed on the screen a white sheet which was scrolled something like "Built green? Nope, black!" Then some other legend and then off to the lower left it says "ELF."

So we really are dealing with a major event here and I would offer for purposes of this motion, the exhibit that Mr. Fox has prepared, A-219, to be made part of the record. The prosecution has been given copy of it.

THE COURT: Was that the copy you provided the Court involving the newspaper accounts?

MR. BLOOM: It is newspaper accounts, but I think the print copies of the newspaper were probably not available at the time. So this was all taken from the Internet, although it does refer to the Seattle Post-Intelligencer, the Seattle Times. It is from their web sites as opposed to the actual print.

THE COURT: You are talking about making it part of this motion for this record. All right. Any objection to that?

MR. BARTLETT: No, Your Honor.

THE COURT: All right. Then the clerk will file it.

MR. BLOOM: This is definitely not to go to the jury.

THE COURT: Correct.

1          MR. BLOOM:   One last thing I wanted to mention.

2    Mr. Bartlett mentioned this kind of thing is not

3    unprecedented, indeed he is correct in the case of Jeff Lewrs,

4    LEWRS, he was on trial for arson in Oregon.   It was, I believe

5    a state case.   A mistrial was declared because the attorney

6    passed away, had a heart attack, and as I understand it, on

7    the day the trial was to -- the retrial was to begin and the

8    jury was to be selected, a second arson at the Romania

9    automobile dealership took place and a request was made by the

10   new attorney to delay the trial.   The Judge chose not to, and

11   Mr. Lewrs was convicted.

12         What's significant about that event is that the person

13   leaving that arson was a cooperating person who's now a

14   cooperating witness for the United States of America; that

15   would be Mr. Meyerhoff.

16         Indeed, we don't know who was responsible for the fire,

17   the instant fire in Woodinville, but these kinds of things

18   often happen or at times happen where provocateurs cause the

19   event to happen.

20         We also know at least one cooperating witness, who has a

21   history of being a serial arsonist, is not incarcerated at

22   this time, and I need not mention names, I think the Court

23   knows to whom I refer.

24         And as I say, this is no way to the advantage of

25   Ms. Waters.   Quite the contrary.

1    So we are forced to make this motion for mistrial, despite

2  the fact that we would like this jury to decide the case.

3         THE COURT:  All right.  Response?

4         MR. BARTLETT:  Your Honor, we obviously oppose it.  I

5  think the Court made the critical inquiry which is not whether

6  there was a story this morning -- to clarify, the article with

7  regard to the Seattle PI and the Seattle Times were from the

8  website.  There was nothing in the paper, if someone were to

9  pick up the hard copy this morning.  The Court made the

10  inquiry whether they heard anything outside that would affect

11  them.  All of them indicated they had not.  That is the

12  critical information.

13    I will say this, Your Honor, we are in federal court, for

14  Mr. Bloom to stand up and imply that agent provocateurs

15  somehow set up and instigated this arson, I think goes beyond

16  the bounds even for Mr. Bloom, which are pretty broad bounds.

17    If he wants to stand up in open Court and accuse the

18  government of somehow arranging this arson, he better have

19  something more than his own paranoid delusions.

20         MR. BLOOM:  Well, I didn't get personal and I won't

21  get personal, but I have some experience with cases in which

22  agents provocateur --

23         THE COURT:  I don't want to sit here and hear about

24  the two of you as to where you might be on one side or the

25  other on this particular issue.  The point is, you are making

1  a motion for a mistrial, I think I have given you adequate

2  time to state those reasons.

3          MR. BLOOM:   Yes.

4          THE COURT:   So, I will say, I have instructed the

5  jury, I had them back in here.   My position on this is the

6  same, it's unchanged.

7      I don't see any reason to talk to the jury any more about

8  it.

9      So I am denying the mistrial, but the record is made.

10          MR. BARTLETT:   I should clarify, Your Honor, there

11  has been an arson, approximately once a year throughout the

12  last five years, that has been taken credit either by signs

13  left there or by web sites in the Western District of

14  Washington.

15          THE COURT:   All right we are in recess.

16          THE CLERK:   All rise, Court is in recess.

17          (Court recessed at 10:50 a.m. pending further

18  deliberations.)

19          (Back in open court at 4:30 p.m.)

20          THE COURT:   All right.   You may be seated.

21      Good afternoon.

22          MR. BLOOM:   We have a very brief request of the

23  Court.   I am informed that CNN, today, had this fire as the

24  lead story, and in it they talked about the fire fighters

25  didn't want to go into certain of the buildings, because they

feared it might be booby trapped. They talk about terrorism.
They talked about eco-terrorism.

So, as a result, and I also hear that, or I imagine there
will be a lot of local coverage on local news channels as well
as national, so we would ask the Court to instruct the jury,
please, based on Ms. Waters Fifthth and Sixth Amendment
rights, that they should not watch or listen to radio, watch
television, or read any newspaper accounts at all today and
tomorrow.

Thank you.

THE COURT: All right. You are talking about reading
any accounts about this case.

MR. BLOOM: I would say not at all. It appears that
it's so pervasive that if they wind up watching the news at
all or listening to the news on the radio, or picking up the
newspaper, it is going to be front page and top story stuff.
So, if they watch it at all I think they will be exposed to
it.

THE COURT: Well, you are asking me to perhaps take
them out of the real world. I know what my normal instruction
would be. Anything else? I think something should be said to
them, but whether to take it to that extent becomes one thing.

I don't know who all talks to the newspaper. I rather
nobody talk to them about anything until the case is over but
I don't always get my wish.

1       Any comment on any of this?

2              MR. BLOOM:  That's my request.

3              THE COURT:  I understand.

4              MR. BLOOM:  That's all.

5              MR. BARTLETT:  We have no objection to the Court

6       asking the jury to refrain from looking at newspaper and movie

7       stories tonight and tomorrow.

8              THE COURT:  I am hoping they are listening to what I

9       say, too.  That's my wish.

10      We are ready for them?  Bring them in.

11      (Jury present at 4:35 p.m.)

12             THE COURT:  All right.  You may be seated.

13      Good afternoon.  It is my understanding that Martinez, I

14      think it is fair to say you haven't reached a verdict and it

15      is time for you to go home and get a good night sleep and come

16      back tomorrow.

17             PRESIDING JUROR:  That's correct.

18             THE COURT:  Let me say also, as you go home, as I

19      have been saying throughout this case and before this case

20      started, to not discuss the case, not research anything, do

21      not do anything about this case.  You are only to discuss the

22      case and get involved in this case when all of you are in the

23      jury room.

24      I had you in here this morning, to deal with other issues,

25      so I am going to ask you in that regard, to not deal with any

1   TV, any newspapers, anything that would give an account,

2   anything that may influence your decision.

3       So I am asking you, I guess, to avoid watching TV, in case

4   something jumps out at you.  If you are not looking at

5   anything, of course you won't see anything.

6       And ask you to act in that way, until this case is over

7   with.

8       I want you to decide this case, as I have indicated,

9   solely from the evidence that's been presented to you here in

10  this courtroom.  Everything you need to decide this case has

11  been given to you and you have that information.

12      I want nothing else to come into play as you go into your

13  deliberations in terms of deciding the case.

14      So I will hold you to that, and see you in the morning at

15  9:00.  All right.

16      (Jury excused at 4:35 p.m.)

17          THE COURT:  All right.  You may be seated.  We will

18  be at recess until tomorrow.  I would ask you the same thing,

19  10:00 would be a time to make contact with the Court.  And

20  when you do that, try to stay within 15 minutes of the

21  courthouse.  Then we'll proceed in that fashion.

22      Anything else?

23          MR. BARTLETT:  Nothing Your Honor.

24          THE COURT:  Then we will be at recess.

25          THE CLERK:  All rise, Court is adjourned.

1    (The Court recessed to Tuesday, March 4, 2008, at the

2  hour of 9:00 a.m.)

3                    *    *    *    *    *

4                    C E R T I F I C A T E

5

6     I certify that the foregoing is a correct transcript from

7  the record of proceedings in the above-entitled matter.

8

9  /S/  Teri Hendrix _____        May 5, 2008

10  Teri Hendrix, Court Reporter              Date

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25